STEPHEN A. CHASE & others *vs.* ADAM H. DICKEY & others, trustees.

Suffolk.     March 27, 28, 1912. — October 9, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Equity Pleading and Practice,* Parties, Petition to intervene, Estoppel.  *Charity. Religious Society.   Attorney General.   Devise and Legacy.   Words,* "Balance."

In a suit in equity by the officers of an unincorporated church, as constituting a corporation by virtue of R. L. c. 37, § 1, to compel a transfer to the plaintiffs of real estate devised to the church upon an alleged charitable trust by the residuary clause of a will, where the Attorney General had become a party and had set up as a bar R. L. c. 37, § 9, alleging that the plaintiffs were incapable of holding the property because the income from it exceeded $2,000 a year, the only heirs at law of the testatrix filed a petition to intervene, alleging that the residuary clause of the will was void by reason of the statute and the action of the Attorney General thereunder, and also that the alleged trust was invalid because contrary to public policy and because of indefiniteness and that the real estate devised vested in the heirs at law as intestate property.   It appeared that the heirs at law had made settlements with the testatrix during her life, under which they had received large sums of money which they retained, had released all claims as heirs against her estate and had covenanted not to contest any disposition of her property that she might make.  *Held,* that the heirs at law should be allowed to intervene to the extent of being heard upon the validity of the trust, and that they were not precluded from being heard by their covenants or by their retention of the sums received by them.

Under the provision of R. L. c. 37, § 9, that "the income of the gifts, grants, bequests and devises made to or for the use of any one church shall not exceed two thousand dollars a year, exclusive of the income of any parsonage land . . .," the validity of a gift to a church of property yielding an income in excess of the limitation can be brought in question only by the Commonwealth; but this may be done by the Attorney General on becoming a party to a suit which was not instituted by him.

A corporation under R. L. c. 37, § 1, consisting of the officers of an unincorporated church performing duties similar to those of deacons or wardens, is prohibited by § 9 of the same chapter, when objection is made by the Commonwealth, from receiving a gift of property to be held by it in trust and not for its own special uses which produces an income of more than $2,000 a year.

The provision of R. L. c. 37, § 9, by which a church is prohibited, when objection is made by the Commonwealth, from receiving a gift of property which produces an income of more than $2,000 a year, although it prevents a church from taking such property devised to it as trustee, does not affect the validity of such a devise, which must be determined independently of the statute.

Where a gift by will of the residue of a large estate provides that such portion of the income as shall be necessary shall be used for the repair of certain buildings,

and "that the balance of said income and such portion of the principal as may be deemed wise shall be devoted and used" for a general purpose alleged to be charitable, the provision for the repair of the buildings can be regarded as a charge on the fund subordinate to the main purpose of the trust, so that, if this provision should fail or be unenforceable, it would not affect the character of the true residuary provision of the will as to the "balance" of the income.

A gift by will of property of which the income shall be used for keeping in repair a church building used as a place of public worship is a gift for a charitable use. ·

A residuary trust provided for in the will of the founder of Christian Science "for the purpose of more effectually promoting and extending the religion of Christian Science as taught by me" is not void by reason of indefiniteness, assuming that such teachings are not more difficult of ascertainment than those of other Christian sects.

The founder of "Christian Science" left by her will the residue of her property to "the Mother Church — the First Church of Christ, Scientist, in Boston, Massachusetts, in trust for the following general purposes : . . . I desire that the balance of said income, and such portion of the principal as may be deemed wise, shall be devoted and used by said residuary legatee for the purpose of more effectually promoting and extending the religion of Christian Science as taught by me." In a suit in equity by the officers performing the duties of deacons or wardens of the church named as trustee, as constituting a corporation under R. L. c. 37, § 1, praying for the delivery of the trust property to them, in which the Attorney General was a party and set up as a bar R. L. c. 37, § 9, and in which it was decided that the plaintiffs were incapable of holding the property because the income from it exceeded $2,000 a year, the heirs at law of the testatrix were allowed to file an intervening petition in which they alleged that the residuary clause was void by reason of the action of the Attorney General under the statute and also that the alleged trust was contrary to public policy, but on this last ground they made no argument. *Held,* that, assuming that "the religion of Christian Science as taught" by its founder stood as a subject for charity upon the same footing as the religion of other Christian sects, the gift was one to a public charity; that the purpose of the gift and the trustee named were not so inextricably combined that they must stand or fall together; and that, the trustee named being incapable of taking, the trust would not be permitted to fail for that reason; but that an inquiry into the character of the teachings of the founder of Christian Science further than was possible upon the record would be necessary before it could be determined whether the assumption as to the religion so taught was justified. An order was made that the bill should be dismissed unless proper amendments to it were made within a time limited.

RUGG, C. J.  This is a suit in equity, in which the plaintiffs aver that they are "the 'Christian Science Board of Directors' in charge of all the spiritual and temporal affairs and of the property of The First Church of Christ, Scientist, in Boston, Mass., also known as the 'Mother Church,' an unincorporated religious society in said Boston maintaining regular religious services in its church edifice, and that their duties are similar to those of deacons

or wardens of churches or religious societies, and that they, as such, with their successors, constitute a corporation under section 1 of chapter 37 of the Revised Laws." The original defendants were the executor of the will of Mary Baker G. Eddy, and Dickey, McLellan and Fernald, trustees under deeds from the testatrix.

Mrs. Eddy, the founder of "Christian Science," so called, conveyed certain real estate, the net annual value of which is largely in excess of $2,000, to the defendants, Dickey, McLellan and Fernald, to hold in trust for certain uses during her "earthly life and at the termination thereof to dispose of the same in accordance with the provisions of" her "last will and the codicils thereto." She has deceased, and her last will and codicils have been allowed in New Hampshire, the State of her domicil, and admitted to ancillary probate in this Commonwealth. The language of the residuary clause of her will now material is: "I give, bequeath and devise all the rest, residue and remainder of my estate, of every kind and description, to the Mother Church — the First Church of Christ, Scientist, in Boston, Massachusetts, in trust for the following general purposes: I desire that such portion of the income of my residuary estate as may be necessary shall be used for the purpose of keeping in repair the church building and my former house at Number 385 Commonwealth Avenue in said Boston, which has been transferred to said Mother Church, and any building or buildings which may be, by necessity or convenience, substituted therefor; . . . and I desire that the balance of said income, and such portion of the principal as may be deemed wise, shall be devoted and used by said residuary legatee for the purpose of more effectually promoting and extending the religion of Christian Science as taught by me."

The bill alleges a request upon the trustees for a conveyance to the plaintiffs of the real estate, a willingness on their part to make it, but a refusal without an order of court on the ground that the plaintiffs are incapable of holding it by reason of R. L. c. 37, § 9. The language of this section is: "The income of the gifts, grants, bequests and devises made to or for the use of any one church shall not exceed two thousand dollars a year, exclusive of the income of any parsonage land granted to or for the use of the ministry." The prayer of the bill is for a conveyance of this real estate

to the plaintiffs as entitled thereto under the will of Mrs. Eddy. The defendant trustees admit the allegations of the bill and pray for the instructions of the court. The executor avers that the personal estate of the testatrix is amply sufficient to pay all debts and legacies, and that there will be no occasion to sell the real estate here in question for that purpose, and otherwise adopts the answer of the trustees.

The Attorney General became a party, and demurred on the ground that the next of kin of Mrs. Eddy were necessary parties. This demurrer was overruled.

The Attorney General then answered admitting the substantial allegations of fact in the bill, but setting up R. L. c. 37, § 9, as a bar to its maintenance.

George W. Glover and Ebenezer J. Foster [Eddy], being all the next of kin and heirs at law of the testatrix, have petitioned for leave to intervene, reciting the appearance of the Attorney General and his contention under the statute, and further setting up (1) that the residuary clause in the will is of no effect by reason of the statute, (2) that it is in contravention of the public policy of the Commonwealth, and (3) that it is "vague, indefinite and incapable of enforcement as a valid testamentary disposition," wherefore, they say, the legacy has failed, and the property is intestate and vested in them as the sole heirs at law of Mrs. Eddy.

The plaintiffs and all the defendants, except the Attorney General, objected to the allowance of the petition to intervene, on the ground that the heirs at law made what are termed "family settlements" with Mrs. Eddy during her life, according to which they each received from her and still retain large sums of money and other valuable rights, and in consideration thereof released and extinguished all claims as heirs against her estate, and covenanted not to contest any disposition of her property that she might make.

The case was heard upon the pleadings before a single justice, who reserved "all questions raised by the record . . . for the consideration and determination" of this court.

1. It is not necessary to consider the demurrer of the Attorney General. All the heirs at law have petitioned to be made intervening parties, which presents the questions of substance raised by the demurrer.

2. The heirs at law should be allowed to intervene to the extent of being heard upon the validity of the trust. If for any reason the residuary clause of the will is ineffective, the estate must go somewhere. It is either intestate property or, possibly, liable to escheat to the Commonwealth. It is not necessary to decide its devolution. In any event the subject is one in which the heirs at law are interested, and hence are entitled to a hearing. It may be assumed that if the Commonwealth had not become a party, the heirs at law alone would not be parties in interest as to the effect of the inhibition of the statute against the gift to a church. It would not be for them to raise that question, for the reason that the Commonwealth alone has a right to challenge such a gift. *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280. But here the Attorney General has been made a party. He has raised expressly the point that the plaintiffs are not entitled to a conveyance because of the invalidity of the residuary clause. Hence the hostile attitude of the State is disclosed. This gives the heirs at law a standing, because if the contention of the Attorney General is sustained, it is possible that the heirs may take. Their kinship is not extinguished by their so called family settlement agreement. They are not of necessity precluded by their covenants and the advancements to them from presenting arguments as heirs at law touching intestate property or from showing that in truth the property is intestate. It may be assumed that a covenant not to contest a will or to release all claim to share in the estate of an ancestor based upon an adequate advancement freely made with sufficient knowledge of the facts and without fraud would be enforced. *Quarles* v. *Quarles*, 4 Mass. 680. But this principle fails when all the heirs have joined in a similar covenant and there is intestate estate. While it might be insisted upon for the benefit of heirs who had not covenanted in like manner, when all heirs are in this regard on the same footing, there is no one in whose behalf the covenant may be invoked. This is not an initial contest touching the execution of the will, testamentary capacity or other grounds for opposing the allowance of the will, as to which different rules of law would arise. It is a question whether the instrument, allowed as the will, disposes of the estate in a valid way, or whether it is inoperative in law.

The heirs at law commonly are necessary parties to any proceed-

ing where the inquiry is whether a good charitable trust is created. *Cassidy* v. *Shimmin*, 122 Mass. 406, 411. *Jackson* v. *Phillips*, 14 Allen, 539, 571. *Packard* v. *Marshall*, 138 Mass. 301, 303. *Kent* v. *Dunham*, 142 Mass. 216. *Whitwell* v. *Bartlett*, 211 Mass. 238. This principle applies under the circumstances of this case. The heirs at law are necessary parties in the determination of the question whether the trust is so contrary to public policy that it cannot be carried out, or so indefinite and vague as to be incapable of administration as a public charity.

3. The validity of the residuary clause, so far as dependent upon the church statute (R. L. c. 37, § 9) is open upon this record. A gift like the present to a corporation beyond its power to take can be questioned in the first instance by the Commonwealth alone. It is good against everybody else. The restrictions upon the powers of a corporation to hold property imposed either by the terms of its charter or by general law can be taken advantage of only in a direct proceeding by the creating sovereign power. *Jones* v. *Habersham*, 107 U. S. 174, 188. *Davis* v. *Old Colony Railroad*, 131 Mass. 258, 273. *Evangelical Baptist Benevolent & Missionary Society* v. *Boston*, 204 Mass. 28, 33. This proceeding is in that sense direct and immediate. The Attorney General has become a party. He is a proper party. No objection has been or could be made justly against his appearance. He raises peremptorily the question of corporate capacity to take. The particular form of the proceeding is not material. The substantial inquiry is whether it is of such a nature that the material questions are open as they would be in an action instituted by himself for that purpose. This proceeding is sufficient for that end. It is distinguishable from *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280, in fundamental respects. There not only was the Attorney General not a party, but the State acting through its legislative department had waived its rights and legalized the gift by the enactment of a statute.

4. The plaintiffs set out as the ground of their right to a conveyance that they are a corporation under R. L. c. 37, § 1. The material allegations are that their duties are similar to those of deacons or wardens of churches or religious societies, and that these and similar officers under the statute are "deemed" a body "corporate for the purpose of taking and holding in succession all gifts, grants, bequests and devises of real or personal estate

made either to them or their successors, or to their respective churches, if unincorporated, or to the poor of their churches." The substance of this section is found first in Prov. St. 1754–55, c. 12, where it was prefaced by a preamble indicating that its enactment was induced by doubts whether grants and donations to such officers or to churches would go in succession. *Goring* v. *Emery*, 16 Pick. 107, 118. *Weld* v. *May*, 9 Cush. 181, 185. *Earle* v. *Wood*, 8 Cush. 430, 437. *Stebbins* v. *Jennings*, 10 Pick. 172, 189. Section 1 of the original act was and has remained in successive re-enactments and revisions in substance the same as the present law. The prohibition in § 3 of the original act was against an annual income from gifts in excess of £300. There was a further provision that donations, bequests and devises, not made in accordance with the statute, should be void; but this was repealed by St. 1785, c. 51. This is the nearest approach to a real mortmain act in Massachusetts. As is pointed out in *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280, 284, the limitations upon the power of corporations in this Commonwealth to hold property, while probably growing out of the mortmain legislation of early times in England, has been narrow in scope, and has been based upon considerations of public policy and in the interest of the State alone. The slight changes in phraseology of the statute in its successive enactments do not indicate any intent by the Legislature to change the law in the parts now under consideration. The natural construction of the language of R. L. c. 37, §§ 1 and 9, is that unincorporated churches and religious societies may receive donations up to the limited amount, and as against the Commonwealth they have no right to receive and hold gifts in excess of this amount. It is plain that a gift directly to a church for its own benefit is within the prohibition. The residuary clause of this will makes a gift to the First Church of Christ Scientist "in trust" to be devoted to the repair of church buildings and "the purpose of more effectually promoting and extending the religion of Christian Science as taught by" the testatrix. This latter purpose in substance is not a gift to the particular ecclesiastical organization for its special needs. It manifests a broader design, and authorizes the use of the gift for spreading the tenets of faith taught by the testatrix over an area more extensive than could possibly be gathered in one congregation. It in-

cludes the most catholic missionary effort both as to territory, peoples and times. It is the founding of a trust of comprehensive scope for the upbuilding of the sect which the testatrix made the object of her bounty. While in a general sense it may be said that every church is devoted to "promoting and extending the religion" of the denomination to which it belongs, a gift to the particular use described in this will is not a gift to the church to do with as it chooses. The testamentary statement of the purpose of the gift when coupled with its magnitude and express fiduciary words manifests an intent that it shall be devoted as a trust fund to the specified ends. The gift is stated to be "in trust." That this is its real meaning is confirmed by reference to the clause of the will and to the second codicil by which substantial legacies are given directly or without restriction to the same First Church. The will shows a plain appreciation by its maker of the vital distinction between an absolute gift and a trust. The question, then, is, Does the statute prohibit a gift to a church of property of more than $2,000 annual income to be held by it in trust, and not for its own special uses? It may be conceded that a gift upon these trusts would not be so alien to the objects of a church as to be beyond its power to take and hold apart from the statute. Parishes, which are religious societies, have been held competent to receive gifts in trust for the maintenance of schools. *First Parish in Sutton* v. *Cole*, 3 Pick. 232. *White* v. *South Parish in Braintree*, 13 Met. 506. *Boxford Religious Society* v. *Harriman,* 125 Mass. 321. It is within the undoubted power of a church or kindred organization to devote its unappropriated resources to the aid of other domestic or foreign churches, missions or other religious purposes.

It was said by Mr. Justice Gray in *Jones* v. *Habersham*, 107 U. S. 174, at 182: "It is a novel proposition, as inconsistent with the rules of law as it is with the dictates of religion, that a Christian church or religious society cannot receive and distribute money to poor churches of its own denomination so as to promote the cause of religion in the State in which it is established." *Sohier* v. *Wardens & Vestry of St. Paul's Church*, 12 Met. 250, 258. *Baker* v. *Fales*, 16 Mass. 488, 495. *McAlister* v. *Burgess*, 161 Mass. 269. But this consideration is of small weight. Apart from statute, no bound is fixed to the amount of property which a chari-

table or other corporation may hold. The statute prohibits dona-
tions above the stipulated amount "to or for the use of any one
church." These words in their usual sense apply as much to gifts
in trust as to gifts outright. There is nothing in the history of the
statute or its context to indicate that they are employed in any
restricted sense. In ordinary speech, a gift to a church is one to
it by name. Of that description is the present devise. The his-
tory and the arrangement of R. L. c. 37 indicate that §§ 1 and 9
are complementary of each other. So far as deacons, wardens and
other similar church officers are clothed with corporate power to
receive donations under § 1, to that same extent they act under
the limitation and inhibition set forth in § 9. This view is con-
firmed by other statutes of a kindred nature. R. L. c. 37, § 10,
creates monthly meetings of Friends bodies corporate for the pur-
pose of holding donations "to the use of such meeting or to the use
of any preparative meeting belonging thereto," but the annual
income of property so held "shall not exceed five thousand dollars
a year." R. L. c. 36, §§ 40 and 41, limit the power of trustees of
the Methodist Episcopal churches to hold property in trust for
religious uses (outside of church buildings) to such as yields a
yearly income not in excess of $4,000. R. L. c. 36, § 44, limits
the property of Roman Catholic church corporations to $100,000,
exclusive of church buildings. Church corporations thus are re-
stricted by general law as to the amount of property which may
be held. Laws of general scope respecting charitable corpora-
tions limit the amount of property which they may hold. R. L.
c. 125, §§ 7 and 8; c. 124, § 19. The policy of the Commonwealth
appears to have been declared in its early days and steadfastly
adhered to through the intervening years to maintain direct con-
trol over the amount of property which should be vested in its
church and charitable corporations. Its manifest purpose has
been to establish a limit for the accumulation of property in the
hands of any one such corporation. Many special acts of incor-
poration scattered through the acts of the Legislature, year by
year, almost from the beginning, fixing limitations of varying ex-
tent, show a similar policy.

The conclusion seems irresistible from these considerations
that the plaintiffs as a body corporate under R. L. c. 37, § 1,
when objection is made by the Commonwealth, are restrained

from taking and holding the property described in the bill by reason of § 9. In *Kinney* v. *Kinney*, 86 Ky. 610, *Morgan* v. *Leslie*, Wright, 144, and *Heiskell* v. *Chickasaw Lodge*, 87 Tenn. 668, relied on by the plaintiffs, the State was not a party, and a statute different from ours was under consideration. Hence it is not necessary to review these cases.

5. It is contended by the Attorney General that, it being determined that the plaintiffs cannot take, the bill must be dismissed. But the reservation should not be so narrowly construed. It presents for decision "all questions raised by the record." So far as other material matters are disclosed upon the record with sufficient fulness, which must be decided ultimately and which have been argued by the parties in interest, they are ripe for decision now under the terms of the report.

6. The church statute affects only the power of the church to receive and hold as against the Commonwealth, and is not a limitation upon testamentary capacity. This follows inevitably from the grounds of decision in *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280. The differences in phraseology between R. L. c. 125, § 8, the statute there considered, and the one in question in the case at bar, are immaterial upon this point. This statute is not an amendment to the statute of wills. To the same effect is *Glover* v. *Baker*, 76 N. H. 261.

7. Nor is the devise void simply because of the church statute. The plaintiffs are prevented from taking advantage of the will because of the statute, and not because of any infirmity inherent in the devise. The statute does not strike at the gift itself and declare that void. It only determines the right of the plaintiffs as devisees. It does not undertake to affix any designation to the devise. Its validity must be considered on its own merits. A different question might arise if the gift had been absolute to the church. But where it is a trust which is created, its soundness must be considered as a question by itself.

8. It is contended that the devise is void, under the principle that if under the language of the will the property may be applied to other than strictly charitable uses, then it is too indefinite in a legal sense for the court to execute. *Nichols* v. *Allen*, 130 Mass. 211. *Wilcox* v. *Attorney General*, 207 Mass. 198. *Dunne* v. *Byrne*, [1912] A. C. 407, 411. The second codicil, which removes

the Pleasant View estate from the corpus of the trust and revokes the provisions of the will touching it, simplifies this branch of the case. But it is suggested that the provisions for the repair of the Commonwealth Avenue house (which is averred to be the par-· sonage of said church) and of the church building are private and not charitable uses, and hence that the whole devise fails under the rule just stated. Even if it be assumed that this premise is sound, the result does not follow.

The provision of the will is equivalent to making the repair of the Commonwealth Avenue house and of the church a charge on the main fund. The clause as a whole indicates care for the house and church as one purpose, but the final residuary purpose is the promotion and extension of the religion of Christian Science. The word "balance" in this connection is employed in the twofold sense, of indicating first the subsidiary nature of the repair of the church and house as compared with the other object, and, second, the essentially residuary character of the ultimate testamentary design. Hence, if the first two objects fail or are unenforceable, the last becomes the true residuary provision of the will, sweeping in all those that are void or lapse for any other reason. In this aspect, the case at bar comes within the rule applied in *Dexter* v. *Harvard College,* 176 Mass. 192, and cases cited at 196. *In re Rogerson,* [1901] 1 Ch. 715.

This construction is confirmed by the further provision that for the chief residuary purpose of "promoting and extending the religion of Christian Science" any portion of the principal of the fund may be used, a power not attaching to the other objects. The clause read as an entirety manifests a purpose to make this the dominating and real residuary purpose of the testatrix. This conclusion does not impinge in any degree upon the thoroughly well established principle that where a fund is left for the support in perpetuity of several trusts, one private and others charitable, the whole fails, *Rotch* v. *Emerson,* 105 Mass. 431, 433, *Chamberlain* v. *Stearns,* 111 Mass. 267, and its corollary that where property is to be distributed by executors among objects, some of which are private and others charitable, the gift fails as a charity, *St. Paul's Church* v. *Attorney General,* 164 Mass. 188, 195, *Minot* v. *Attorney General,* 189 Mass. 176, and *Gill* v. *Attorney General,* 197 Mass. 232, 236.

We are of opinion, however, that a gift for the repair of a church, in the modern sense of that word, as a place for public worship, open to everybody and established for the promotion of religion and morality among all people, whether regularly connected with its ecclesiastical organization or not, is a charity. "A gift to a church *eo nomine* is a gift to a charity." *St. Paul's Church* v. *Attorney General*, 164 Mass. 188, 197. *Dexter* v. *Gardner*, 7 Allen, 243, 247. *Osgood* v. *Rogers*, 186 Mass. 238. *McAlister* v. *Burgess*, 161 Mass. 269. *Sears* v. *Attorney General*, 193 Mass. 551, and cases cited. In the latter case the restriction of *Old South Society* v. *Crocker*, 119 Mass. 1, and like cases to their special facts is referred to. *Bartlett, petitioner*, 163 Mass. 509, 514. *Teele* v. *Bishop of Derry*, 168 Mass. 341. Indeed, "repair of churches" is not only one of the charities mentioned in St. of 43 Eliz. c. 4, but has been made the basis of a considerable class of charitable uses. *Jackson* v. *Phillips*, 14 Allen, 539, 552.

In England it is settled that the building and repair of a church and the repair of a parsonage are charitable objects. *Attorney General* v. *Bishop of Chester*, 1 Bro. C. C. 444. *Sinnett* v. *Herbert*, L. R. 7 Ch. 232. *Vaughan* v. *Thomas*, 33 Ch. D. 187.

But the plaintiffs are precluded from taking, even if a devise for the repair of a church building devoted to public worship and of a parsonage is a devise to a charity, because it appears that other legacies in this will to the First Church of Christ, Scientist, equal the amount it is permitted to hold under the statute, and it is averred that the estate is of such size that the legacies will all be paid in full. Moreover, we understand the plaintiffs to concede in their bill of complaint that the fund is not needed for the repair of the church building and the Commonwealth Avenue house and is to be devoted "exclusively for more effectually promoting and extending the religion of Christian Science." Hence that is the only aspect of the case which requires further consideration. The devise is not void because of reference to these two objects.

9. The residuary trust as thus interpreted is not void for general indefiniteness. The promotion of "the religion of Christian Science" is as definite as many donations which have been upheld as public charities. Relief of spiritual destitution and religious or moral ignorance, intolerance or perversity, is a good public charity. The spread of the Christian religion and of its various denomina-

tions and sects has been held many times to be a charitable use for trusts. *Baker* v. *Fales*, 16 Mass. 488, 495. *Going* v. *Emery*, 16 Pick. 107. *Hinckley* v. *Thatcher*, 139 Mass. 477, 488. *Commissioners of Income Tax* v. *Pemsel*, [1891] A. C. 531, 572.

Christian Science as a denomination of Christianity may be assumed to be no more difficult of ascertainment than many other sects. It is argued, however, that because the testatrix confined her benefaction to the spread of Christian Science as taught by her, there is thereby involved. an inquiry into oral utterances of such vagueness and dependent upon such uncertainty of recitals by hearers that indefiniteness in a legal sense must be inevitable. Certainly this cannot be presumed in advance of a determination of what her teachings in fact were. It is not to be assumed that they are more difficult of ascertainment than those of most other sects of Christendom, nor that a court of equity would encounter any insurmountable difficulty in administering the trust.

10. The facts disclosed on the record and appearing in the will do not lead to the conclusion that the intent of the testatrix was fixed on the donee named so profoundly that if the donee fails, the gift fails. The purpose of the gift and the trustee are not so inextricably combined that they must stand or fall together. The support of a branch of the Christian religion being the declared purpose of the trust and this being a public charity, the gift will stand unless it appears that the discretion of the particular trustee named is of its essence. There is disclosed no exceptional reliance upon the particular corporation named beyond that which appears commonly. The establishment of the trust does not seem to depend upon the particular instrument for execution nominated in the will. It is the not unusual case of a plain charitable intent, where the legatee is incapable of taking, and the trust is not permitted to fail for lack of a trustee. *Bliss* v. *American Bible Society*, 2 Allen, 334, 337. *Winslow* v. *Cummings*, 3 Cush. 358. *Richardson* v. *Mullery*, 200 Mass. 247. It does not fall within the class of cases where the administration of the trust is of its essence, and where it cannot be administered in any other way than that pointed out in the will. The situation here presented distinguishes the case plainly from *Stratton* v. *Physio-Medical College*, 149 Mass. 505, *Bowden* v. *Brown*, 200 Mass. 269, and like cases.

11. In this opinion heretofore it has been assumed without

deciding that the words of the will, "the religion of Christian Science as taught" by Mrs. Eddy describe a denomination of Christianity, which stands upon the same footing in respect of being a proper subject for charity as other Christian sects. One of the objections to the validity of the trust stated by the petitioners to intervene is that these teachings of the testatrix were "in contravention of the public policy of the Commonwealth." This aspect of the case has not been argued by the petitioners to intervene nor by the Attorney General. In view of the peculiar language of the will in limiting the gift to the promotion and extension of Christian Science as taught by Mrs. Eddy, an inquiry into the character of her teachings is necessary. Two books written by her have been called to our attention. Neither of these purport in terms to be the exclusive authoritative statements of her teachings. Quotations from other of her writings are found in the petitioners' brief. There appears not to be enough in the present record to furnish a basis for the determination of the point whether the "religion of Christian Science as taught by" Mrs. Eddy is contrary to the public policy of the Commonwealth. That question is therefore left open.

12. Upon the frame of the bill as it now stands it must be dismissed. All parties who can have any interest in the trust are before the court, except a competent trustee. By proper amendments to the bill, it would seem that all the remaining issues can be raised. Leave may be granted for such amendments to be filed within thirty days from the filing of this rescript. Otherwise the bill may be dismissed.

*So ordered.*

*F. S. Streeter*, of New Hampshire, & *S. J. Elder*, (*F. C. Demond*, of New Hampshire, *E. A. Whitman*, *W. A. Morse* & *L. M. Abbott* with them,) for the plaintiffs.

*C. F. Choate*, (*T. W. Streeter* with him,) for the defendants Dickey and others, trustees.

*F. T. Field*, for the Attorney General.

*H. Taylor*, of District of Columbia, & *H. Parker*, (*W. E. Chandler*, of New Hampshire, *J. D. Long* & *H. H. Fuller* with them,) for the petitioners to intervene.