ARTHUR L. HOWARD & another, executors, *vs.* ARTHUR L. HOWARD & others, trustees, & others.

Essex.　December 5, 1916. — June 25, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Devise and Legacy. Charity.*

A testator, having provided in his will that the family homestead in a certain town and the surrounding land, after the death of his wife, should be held by the trustees under his will as a parsonage for a certain church, if accepted by the church for that purpose, then made the following provision: "It is my purpose, in this arrangement, to preserve that home and place, as they now are, as long as Time permits, as a memorial of the K and B families, and at the same time to render the same useful to the Church and place; by permitting its use as a parsonage, for the private family of the minister for the time being, and of course for the guests of the family," with a request that the trustees shall reserve an attic chamber for storage and for the exclusive use of the estate, and that, if the church shall decline the use of the homestead for a parsonage, or after such acceptance shall not perform the conditions, the trustees "are authorized to make such arrangements concerning the said place as they think under the circumstances would best accord with my wishes and be practicable. I should prefer . . . that the place be kept up, as it has been of late years."

By a codicil he confirmed the provisions of his will so far as his real estate in that town was given to trustees "and to leave no doubt as to the disposition of such real estate and of any real estate" in that town in terms gave it to the trustees and their heirs and assigns, "but in trust, and in the full confidence that such real estate will by them be so administered as to carry out my wishes concerning the same, so far as made known to them in my said will," but, "Instead of permitting the use of our homestead as a parsonage," declared his preference that another property in that town belonging to him should be offered for that use, and "that such other use as may be found practicable of the homestead place be made," suggesting the retention of the homestead as a summer home for the trustees for a term not exceeding twenty years after his death "so that they may the better oversee and administer the trusts of my will and carry out my wishes and purposes," and, after said term of twenty years, "to such benevolent and educational or charitable uses as they may find practicable, and failing such use, to sell the said real estate and to make the net proceeds a part of the residuary fund under my said will and dispose of the same accordingly." *Held,* that the provisions of the will and codicil did not attempt to create in perpetuity a private trust to run with the use of the real estate for a charitable purpose and thus cause both to fall, and that the provisions of the codicil disclosed an intention of the testator that the real estate of the testator in the town in question should be held by the trustees for public charitable uses.

The same will contained the following residuary clause: "If, after the full provision for and full payment of the legacies herein above designated, any surplus still remains, such surplus is to be divided into three equal parts; and I give one of such parts to my business associate and friend, Mr. H, . . . one-third to my friend, Miss D; and one-third to the Boston Young Women's Christian Association." The codicil contained a provision that funds not otherwise appropriated should be used by the trustees in such a manner "as will in their judgment best accord with my wishes and best promote the good of the place." The codicil also contained the following provision: "As the residuary legatee comes within the class of legatees liable to pay a legacy and succession tax, such tax is also to be paid from the general funds or residue of my estate, and the residuary legatee shall be entitled only to that portion of the estate which remains after all taxes and charges of whatever name or nature have been paid, including the amount required for the payment of the taxes upon the residuary legacy as well as upon other legacies and devises given by this will." *Held,* that, there being no intent expressed in the codicil to revoke the residuary clause, no such intent could be implied from the indefinite, inconclusive and vaguely expressed statement of an intent quoted above as to "funds not otherwise appropriated," and that the provision relating to the legacy and succession tax showed that the testator regarded the residuary clause as remaining in force.

It also was *held* that the words in the codicil "so far as any funds left by me and not otherwise appropriated will permit" related to the specific funds held by the trustees for accumulation under certain articles of the will, and were not intended to put a charge upon the residuary fund.

BILL IN EQUITY, filed in the Supreme Judicial Court by the trustees under the will of John D. Bryant, late of Boston, who died on July 27, 1911.

The case came on to be heard before *Pierce,* J., who reserved it upon the bill and answers for determination by the full court.

*R. Homans,* for the plaintiffs, stated the case.

*J. Noble,* (*E. H. Abbot & F. C. Goodale* with him,) for the trustees.

*A. D. Hill,* for the defendant Nettie B. Dobbins.

*T. F. Reddy,* for the Boston Young Women's Christian Association, filed a brief.

*A. S. Hall,* for certain citizens of Meriden, New Hampshire, filed a brief by leave of court.

PIERCE, J.   This is a bill in equity by the executors of the will of John D. Bryant, for instructions as to the disposition of about $150,000 which remains in their hands after paying all debts and specific legacies.

The questions as to which the executors seek instructions are these:

" 1. Does there exist in said trustees, under the will of John D. Bryant, any right, title, or interest in or to, or in any way affecting, the property of said estate now in the hands of the plaintiffs as executors, or should the whole of said property now be distributed to said residuary legatees?

" 2. If there exists in said trustees any right, title, or interest in or to, or in any way affecting, said property in the hands of the plaintiffs as executors, what are the nature and extent of said right, title, or interest, and to whom and in what manner and at what time should said property be paid over or distributed by the plaintiffs? "

The issues are presented by the answers of Edwin H. Abbot trustee on the one side and by the answers of Arthur L. Howard, Nettie B. Dobbins and the Boston Young Women's Christian Association, who claim as legatees under the sixty-fourth article of the will.

"The trustees take the position that the will and codicil create a public charitable trust of the testator's real estate at Meriden; and of the personal estate to such an amount as may be necessary to carry out the trust concerning the real estate; and, in addition, such amount as the trustees may see fit to expend for charitable purposes for the benefit of the inhabitants of Meriden.

Arthur L. Howard, as one of the three "residuary" legatees and

devisees, admits the allegations contained in the bill and submits his rights to the determination of the court.

Nettie B. Dobbins as one of the three "residuary" legatees and devisees, admits the allegations contained in the bill and further answering contends that the effect of said will and the codicil thereto is to make the "residuary" estate divisible in equal shares between herself, the Boston Young Women's Christian Association, and Arthur L. Howard, and "denies that the said residuary estate is subject to any trust whatever."

The Boston Young Women's Christian Association contends in substance that the trusts relating to the real estate are too uncertain and not sufficiently defined to be carried into effect and a trust results by implication of law to the "residuary legatees;" that the trusts relating to the real estate create a perpetuity, that they are not entirely charitable and are therefore void; and that it is the duty of the trustees to sell the real estate and pay over the proceeds to the Boston Young Women's Christian Association according to an agreement between the "residuary" legatees.

Under Articles thirty-four and forty-six of the will, the "present summer home place" and the "Wyman place" are given to the trustees under the will for the use, occupation and enjoyment of his wife, during her life. Under Article forty-six of the will the testator confirms the use of the estate to his wife for life and says, "The legal title vests in the trustees only to enable them the better to carry out my wishes concerning the same after my wife's decease." Authority is given to the wife and trustees to sell the "Wyman place." Paragraphs three and four of Article forty-six read: "To insure the preservation of our present summer home, — which is the old Daniel Kimball place, the house being the old Daniel Kimball mansion remodelled, the timbering is mainly that of the old Daniel Kimball house, — I give and devise the same, subject to the life estate of my dear wife therein, to the trustees under this will, and to their successors in the trust, with the request that they reserve the South attic in the main house, or such other attic chamber as may be preferred, for the storage of such articles as they may at any time see fit to store therein, and for the exclusive use of my estate and of the trustees thereof, and of such persons as they may in writing permit, with full and free right of access thereto and egress therefrom. . . . The use of the rest of the house and

grounds appurtenant thereto, including right of way to and from
the same over land North of the brick block and between that and
the Wyman house, may, after my wife's decease, be offered to the
Congregational Church and Society for a parsonage, free of rent
or charge other than the payment of such taxes, if any, as may
be payable thereon, upon the following terms and conditions,
namely: — "

The fourth of these conditions reads: "That said house shall not,
nor shall any part of it, at any time be used for a boarding house
or rooming house for students. It has not been so used since its
reconstruction. I do not wish that it should at any time be so
used. It is my purpose, in this arrangement, to preserve that
home and place, as they now are, as long as Time permits, as a
memorial of the Kimball and Bryant families, and at the same
time to render the same useful to the Church and place, by per-
mitting its use as a parsonage, for the private family of the minister
for the time being, and of course for the guests of the family.
Whenever the trustees under my will find such use inconsistent
with my purpose of preservation, in good condition, they are at
liberty to terminate such use, and to make such other disposition
of the property as they think will best accord with my wishes
concerning the same."

The seventh condition reads: "If the Congregational Church
and Society (or whatever its legal designation may be) should
decline to accept the use of the said estate for a parsonage, on the
terms and conditions herein set forth, or if, after such acceptance,
such terms and conditions shall not be observed and performed,
the trustees for the time being hereunder are authorized to make
such arrangements concerning the said place as they think under
the circumstances would best accord with my wishes and be prac-
ticable. I should prefer that the title to that place, and the con-
trol of it, should remain in the trustees, and that the place be
kept up, as it has been of late years. But one cannot foresee the
future. I think it best to give my trustees full power and authority,
after my wife's decease, or before her decease, if she should
prefer, and should in writing request that the property be put
to any use other than her occupancy of the same as a summer
home, and should join in any deed, lease or other instrument
necessary or suitable therefor. In case of any ultimate disposal

of the property, or of any use of the same, or other condition of things, rendering the further maintenance of the preservation fund undesirable, such fund and any accumulations or income thereof, accrued but not applied, may fall into and become part of the residue of the property subject to my disposal, and may be applied accordingly."

The words, "to insure the preservation" of the summer home place, and the declaration "It is my purpose, in this arrangement, to preserve that home and place, as they now are, as long as Time permits, as a memorial of the Kimball and Bryant families, and at the same time to render the same useful to the Church and place, by permitting its use as a parsonage, for the private family of the minister for the time being, and of course for the guests of the family," the request to reserve an attic chamber for storage and for the exclusive use of the estate, and the directions and conditions imposed in respect to payments of taxes, and the preservation of the rooms, do not create in perpetuity a private trust to run along with the use of the estate for a charitable purpose and as a result cause both trusts to fail, *Rotch* v. *Emerson*, 105 Mass. 431, 433, *Chamberlain* v. *Stearns*, 111 Mass. 267, *Chase* v. *Dickey*, 212 Mass. 555, 565, but serve merely to reveal the motive for the provision that "The use of the rest of the house and grounds appurtenant thereto . . . may, after my wife's decease, be offered to the Congregational Church and Society for a parsonage" upon certain terms and conditions. *Richardson* v. *Essex Institute*, 208 Mass. 311, 317. *Jones* v. *Habersham*, 107 U. S. 174.

Article sixty-four of the will reads: "If, after the full provision for and full payment of the legacies herein above designated, any surplus still remains, such surplus is to be divided into three equal parts; and I give one of such parts to my business associate and friend, Mr. Arthur L. Howard . . . one-third to my friend, Miss Nettie B. Dobbins; and one-third to the Boston Young Women's Christian Association."

We do not agree with the contention that "this article merely increases the previous legacy to each, if any surplus exists," but are of opinion that the testator intended that the beneficiaries should take as residuary legatees any unappropriated estate. Had the will remained unchanged at the death of the testator, the rights of the residuary legatees to any unappropriated surplus would be

clear, but the testator made a codicil to his will and under Article twenty thereof, he confirmed the provisions of Article forty-six and other provisions of his will so far as the Meriden property is given to trustees, "and to leave no doubt as to the disposition of such real estate and of any real estate at Meriden," does in terms give same to the trustees and their heirs and assigns, "but in trust, and in the full confidence that such real estate will by them be so administered as to carry out my wishes concerning the same, so far as made known to them in my said will."

"Instead of permitting the use of our homestead as a parsonage" he declares his "preference that the Wyman place" be "offered for use" upon terms and conditions in Article forty-six, "concerning such use of our homestead place," and "that such other use as may be found practicable of the homestead place be made," and "suggests" the retention of the same as a summer home for trustees for a term not exceeding twenty years after his decease, "so that they may the better oversee and administer the trusts of my will and carry out my wishes and purposes, and the appropriation of that place, upon the terms and conditions as to its preservation intact set forth in my will" and, after said term of twenty years, "to such benevolent and educational or charitable uses as they may find practicable, and failing such use, to sell the said estate and make the net proceeds a part of the residuary fund under my said will and dispose of the same accordingly."

Under said Article twenty, he provides in substance, in regard to the Bryant block, that, if John F. Cann desires the use of it "for hotel or boarding purposes" the same may be remodelled and grounds improved "at the expense of my estate," the trustees to allow Cann the use of same "for such time or times, not to exceed twenty years" from the testator's decease, "upon such terms as the trustees under my will deem reasonable," so as to "make such use practicable by the said Cann and beneficial to Meriden, even if not profitable to my estate." And if Cann does not take, the trustees may otherwise lease for a term not exceeding twenty years from the testator's decease, and at the end of said term of twenty years, or "earlier if there should be occasion," the trustees "are to appropriate and transfer the said property, or the net proceeds thereof in case of sale, to the residuary legatee under this my will."

In regard to the "Playground" lot, under the same article, the trustees are authorized and empowered to "carry out such plans as I may have or as they may obtain for the improvement of the said playground as a recreation ground or park, by planting trees," etc., and to "permit the use and enjoyment of the same by the public" under regulations of the trustees "until it is in the judgment of the Trustees for the time being desirable not to continue such use, or to make other use of such ground." If opportunity to sell for private residence or summer hotel offers, the trustees, if they deem such "sale expedient," are authorized, under general provisions of the will and "especially hereby" to sell said property "for either of said purposes." In case of sale, the net proceeds are "to fall into the residue of my estate and be disposed of accordingly."

The church voted to decline the use of the Wyman place, and Cann has released any rights he may have in the Bryant block.

The remaining part of said Article twenty reads as follows:

"As no one can know what the future may develop, and in order that the Trustees for the time being may be perfectly at liberty to make such use of the said property and of any other property in Meriden which I may now have or may hereafter acquire and own or be entitled to at my decease as will in their judgment best accord with my wishes and best promote the good of the place, I give my said Trustees and their successors in said trust full power and authority to improve and care for said properties and any of them, so far as any funds left by me and not otherwise appropriated will permit; and if in their judgment it should seem advisable to lease for such time and on such terms as they deem best or to sell and convey each and every parcel of the said property and any parcel thereof, for such purposes, at such price and on such terms of payment as they see fit, they are at liberty to do so. In case of any such sale the net proceeds of such sale are to fall into and become part of the residue of my estate and be disposed of accordingly in aid of the charitable use declared concerning such residue. It is my preference that no part of any of said properties be sold so long as they can in the judgment of my Trustees be advantageously managed with the means at their control for the good of Meriden. In that matter, however, I wish my Executors and Trustees to have as large a discretion as I could have if living and acting therein. But this expression of my wish is not in any way to prevent a sale

or sales and conveyance by good and sufficient deeds free from all trusts if the Trustees for the time being under such circumstances deem such sale best."

Article thirty-one of the will reads: "If the aforesaid Meriden Church should at any time in the future fail to be kept up and maintained, or if for any reason any of the objects, aid and benefit to which are intended by any Article in this will, should go out of existence, or be no longer in need of the assistance contemplated, the fund theretofore held for such purpose may thenceforth be held and the income applied to such other object or objects of benevolence or charity as the trustees for the time being shall deem fit, preferably, in the case of Meriden charities, to other charitable purposes in that locality."

Under Article twenty-one of the codicil, all legacy and succession taxes, etc., are to be paid from the "general funds or residuary funds," so that legacies and devises shall be paid without deduction. "As the residuary legatee comes within the class of legatees liable to pay a legacy and succession tax, such tax is also to be paid from the general funds or residue of my estate, and the residuary legatee shall be entitled only to that portion of the estate, which remains after all taxes and charges of whatever name or nature have been paid, including the amount required for the payment of the taxes upon the residuary legacy as well as upon other legacies and devises given by this will." Then follows this clause: "So far as inconsistent with the provisions of this codicil I modify the provisions of my said will. In other respects I ratify and confirm the same. If my life is spared long enough I hope to carry out certain plans for improvements at Meriden, not for my own profit,—that can not be promoted thereby,— quite the contrary, but at my own cost and for the good of the place. If I am taken away before such plans are accomplished, I have endeavored to give the Trustees under my will full power to carry out my plans so far as known to them."

We are of opinion that the words "but in trust, and in the full confidence that such real estate will by them be so administered as to carry out my wishes concerning the same, so far as made known to them in my said will," disclose a firm intention that the lands of the testator in Meriden should be held by the trustees for public charitable uses, and be administered by the trustees in further-

ance and support of the specific charitable trusts created by the will and codicil or for other similar charitable purposes of an educational or benevolent nature. *Saltonstall* v. *Sanders,* 11 Allen, 446, 470. The trust so construed is not void for indefiniteness, nor obnoxious to the criticism that it authorizes the use of the estate for a public purpose as distinguished from a public charitable purpose. *Minns* v. *Billings,* 183 Mass. 126. *Wilcox* v. *Attorney General,* 207 Mass. 198. See *Blair* v. *Duncan,* [1902] A. C. 37. ·

No express intent to revoke the residuary gift conferred by Article sixty-four of the will upon Arthur L. Howard, Nettie B. Dobbins, and the Boston Young Women's Christian Association, is found in the will or codicil, and none can be implied by the declaration in Article twenty of the codicil of an indefinite, inconclusive and vaguely expressed statement of an intent that funds not otherwise appropriated should be used by the trustees in such a manner "as will in their judgment best accord with my wishes and best promote the good of the place."

Indeed in Article twenty-one of the codicil, the testator expressly recognizes the continued existence of Article sixty-four in the following provision: "As the residuary legatee comes within the class of legatees liable to pay a legacy and succession tax, such tax is also to be paid from the general funds or residue of my estate, and the residuary legatee shall be entitled only to that portion of the estate which remains after all taxes and charges of whatever name or nature have been paid, including the amount required for the payment of the taxes upon the residuary legacy as well as upon other legacies and devises given by this will."

We are of opinion that the word "funds" in the clause "so far as any funds left by me and not otherwise appropriated will permit," has reference to the specific funds held by the trustees for accumulation under articles thirty, thirty-one, thirty-six, forty-six, forty-seven, forty-eight and forty-nine, and is not intended to effect or to put a charge upon the residuary fund created by Article sixty-four. We are of opinion that the provision of Article twenty of the codicil whereby the testator gives to his trustees full power and authority to improve and care for the homestead and other property in Meriden "so far as any funds left by me and not otherwise appropriated will permit" cannot be construed to be declaratory of an intent to revoke the residuary legacy or to impress

upon the residuary personal estate a trust that it be used to such amount as the trustees may require, in the exercise of their discretion in the administration of a general charitable trust for the benefit of the people of Meriden.

It results that the executors are instructed that there does not exist in the trustees under the will of John D. Bryant any right, title or interest in or to, or in any way affecting, the personal property of the estate now in the hands of the plaintiffs as executors, and that the whole of the said personal property should now be distributed to the residuary legatees named in Article sixty-four of the said will.

*So ordered.*