225 F.2d 745
 Alexander SWAN, 2d, Appellant,
v.
The FIRST CHURCH OF CHRIST, SCIENTIST, IN BOSTON,
MASSACHUSETTS, Also Known as the Church of Christ
(Scientist), a Corporation; The Christian Science Board of
Directors, and the Christian Science Publishing Society, a
Corporation, Appellees.
 No. 14195.
 United States Court of Appeals Ninth Circuit.
 Aug. 30, 1955.
Rehearing Denied Oct. 25, 1955.
 
 Eugene L. Wolver, Los Angeles, Cal., for appellant.
 Lindstrom & Bartlett, Ralph G. Lindstrom, Los Angeles, Cal., for appellee.
 Before POPE, FEE and CHAMBERS, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 This is an appeal from a decision finally dismissing, with prejudice, two counts of appellant's complaint and granting a summary judgment upon the remaining third count. Appellees moved to dismiss the appeal on the ground that the court below lacked jurisdiction for want of the required diversity of citizenship, and hence that we may not entertain the appeal.
 
 
 2
 If there be federal jurisdiction here, it is dependent on diversity of citizenship. Plaintiff-appellant is a citizen of California. Each of the named defendants is alleged to be 'a juridical entity, duly organized, existing, recognized and regarded as a body corporate under and by virtue of the laws of the Commonwealth of Massachusetts.' The named Church, Board of Directors and Publishing Society, describing themselves respectively as 'an unincorporated religious trusteeship or society', as a 'group of individuals who are the trustees' for such society, and as 'a trusteeship' moved in the trial court to dismiss the action for want of jurisdiction, the same ground now urged for dismissal of the appeal. The trial court held the objection to jurisdiction not well taken, but dismissed the first two counts for failure to state a claim[1] and granted summary judgment against plaintiff on the third count.
 
 
 3
 Necessarily we must first consider and determine the question of jurisdiction, for if that be lacking we may not decide the merits of the action. Mansfield C. & L. M. Railway Co. v. Swan, 111 U.S. 379, 381, 4 S.Ct. 510, 28 L.Ed. 462; United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263; Canadian Indemnity Co. v. Republic Indemnity Co., 9 Cir., 1955, 222 F.2d 601; Longview Tugboat Co. v. Jameson, 9 Cir., 218 F.2d 547.
 
 
 4
 The contention of the appellees is that they are unincorporated societies or groups, and hence cannot be treated as citizens for purposes of determining federal jurisdiction. Such is the established rule relating to unincorporated associations such as joint stock companies, limited partnerships, boards of trustees, and labor unions. Chapman v. Barney, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800; Great Southern Fireproof Hotel Co. v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842; Thomas v. Board of Trustees, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160; Levering & Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115.
 
 
 5
 Appellant says that even if the named defendants are not strictly corporations, yet under Massachusetts law they are vested with attributes and powers which so completely permit unity of action that they should be treated the same as corporations under the rule of People of Puerto Rico v. Russell & Co., Sucesores, S. En C., 288 U.S. 476, 484, 53 S.Ct. 447, 77 L.Ed. 903. We think that case may not be applied here for the powers vested in these bodies by the Massachusetts statute hereafter quoted are far more limited than those found in the Puerto Rican Sociedad.[2]
 
 
 6
 Jurisdiction here may be found only if it can be said that a defendant can be held to be a corporation of a State other than that of plaintiff's residence. It is not enough to say that these organizations might be sued by their common names, without naming the individual members. See, for example, Thomas v. Board of Trustees, supra. Jurisdiction here depends upon the concept of 'citizens of different States' in Article III of the Constitution and in Sec. 1332 of Title 28. Since 1844 a corporation created by a State has been 'deemed a citizen of that State', Louisville C. & C. Railroad Co. v. Letson, 2 How, 497, 555, 11 L.Ed. 353, or it is conclusively presumed that 'its members are citizens of the State'. Ohio & Mississippi R.R. v. Wheeler, 1 Black 286, 296, 17 L.Ed. 130. Cf. Rules of Civ.Proc. Form 2(a), 28 U.S.C.A.[3]
 
 
 7
 The court below found that the defendant Church and its Board of Directors was a Massachusetts corporation and in this we believe it was correct. Sections 1 and 12 of Chapter 68 of Massachusetts General Laws provided as follows:
 
 
 8
 'Section 1. Officers of churches made bodies corporate.-- The deacons, wardens or similar officers of churches or religious societies, and the trustees of the Methodist Episcopal churches, appointed according to the discipline and usages thereof, shall, if citizens of the commonwealth, be deemed bodies corporate for the purpose of taking and holding in succession all gifts, grants, bequests and devises of real or personal property, made either to them and their successors, or to their respective churches, if unincorporated, or to the poor of their churches. * * *'
 
 
 9
 'Section 12. Powers of unincorporated religious societies.-- Unincorporated religious societies shall have like power as incorporated societies to manage, use and employ, according to its terms and conditions, any gift or grant made to them; they may elect trustees, agents or other officers therefor, and may sue for any right which may vest in them in consequence of such gift or grant; for which purposes they shall be corporations. * * *' (Emphasis added.)
 
 
 10
 In support of their motion to dismiss, appellees filed the affidavit of the lawyer who has represented them in much litigation. This affiant recited the history of the statute quoted, and stated his conclusion that it applied to the Church and the Board of Directors: '(1) The Christian Science Board of Directors of The Mother Church, the First Church of Christ, Scientists, in Boston, Massachusetts, is deemed a body corporate or corporation for the sole and only purpose of 'taking and holding in succession all gifts, grants, bequests and devises of real or personal property' to them, or to their Church; (2) In all and every other respect than specified in (1) hereinabove, said Trustee-Directors and said Church are respectively an unincorporated trusteeship and an unincorporated religious society; * * *.'
 
 
 11
 The words of section 1, quoted above, 'shall * * * be deemed bodies corporate for the purpose of taking and holding * * * real or personal property,' plainly mean that the groups described are corporations. They are 'deemed' bodies corporate, for they automatically become such whenever they fit the statute, and without other formality.[4] It is true that such corporations have powers which are very limited. Corporations vary greatly in the extent of their powers and the breadth of their purposes. But the concept of citizenship for diversity jurisdiction, as applied to corporations, has never been dependent upon the scope of their powers. Cf. Cowles v. Mercer County, 7 Wall. 118, 19 L.Ed. 86. We hold that the Church and the Directors named were a corporation and subject to suit in the court below.[5]
 
 
 12
 The holding that appellees are a corporation disposes of the motion to dismiss the appeal and brings us to the merits of the case.[6]
 
 
 13
 Appellees' argument with respect to their status is that they are not a de jure corporation. The use of the phrase 'de jure corporation' is not an apt one; for whatever be the character imposed on these groups by Chapter 68, it is by virtue of express statute. In no sense can their character be said to be merely de facto. The question is, what does the statute make them. As we think it makes them a corporation, it is necessarily one de jure.
 
 
 14
 Even if we assume that appellant's complaint sufficiently disclosed that it was the defendant Church corporation which did not performed the acts complained of, yet we find ourselves unable to perceive any merit in it. The allegations of the first and second causes of action attempted to be stated by the appellant were summarized by the trial court.[7] His complaint is that although he had once been a Christian Science practitioner and had his name listed in the official publications of the Church, yet after he had withdrawn his name from the list and later requested that his name be reinstated as a practitioner defendant failed to accede to this request. It is not alleged that there was any contractual obligation which required defendants to do this, and the facts alleged fail to disclose that the refusal of the defendants to comply with appellant's demands constituted a breach of any other kind of duty or constituted a tort or other actionable wrong. The trial court properly dismissed these first two counts of the complaint.
 
 
 15
 The third asserted cause of action, after incorporating the substance of the first and second causes, recites that appellant wrote and published a book entitled 'God on Main Street'; that in writing the book he followed the precepts of the Bible and the teachings of Mary Baker Eddy, and that his purpose was to make an appealing presentation of the purposes and blessings of the Christian Science faith to prospective readers; that he tendered the manuscript of the book to the defendants for their examination but they did not reply to his communications; that he published the book and copyrighted it and sent a copy to the defendants but they unlawfully and maliciously conspired to hinder and delay circulation of the book among the members of the Christian Science faith and among the public generally, and have 'impugnated' and 'villified' to the members of the Christian Science faith and to the public generally, the character, motives, ethical and professional standing of the plaintiff in a manner calculated and intended to injure, diminish, harm and destroy the value and status of such book. He alleged that during this time the defendant sold and distributed literature to its branch churches and reading rooms; that defendants notified these churches and reading rooms not to purchase, acquire or sell the plaintiff's book on penalty of their being denied other literature of defendants; that defendants informed these churches and reading rooms that plaintiff was not an approved, authorized and registered Christian Science practitioner; that defendants refused to permit plaintiff's book to be advertised in the Christian Science Monitor; and that all of this was in furtherance of the conspiracy alleged, all to plaintiff's damage in the sum of $100,000.
 
 
 16
 With respect to the motion to dismiss this third cause of action, the court treated it as one for summary judgment, and after notice to the parties to that effect, received and considered the manual of the Church, the deed of trust of Mary Baker G. Eddy, establishing the Publishing Society, and upon the basis of these undisputed documents, and the allegations of the complaint, granted a summary judgment against the appellant upon this third cause of action.
 
 
 17
 Essentially what appellant is alleging in this third count is that the defendants conspired to keep his book from being read or accepted by members of the Church. While the civil courts have not hesitated to determine disputes between sects or divisions of religious societies as to the ownership of property, or as to the right to receive money, Rosicrucian Fellowship v. Rosicrucian Fellowship Non-Sectarian Church, 39 Cal.2d 121, 245 P.2d 481, yet there is no such subject of suit here. Appellant's complaint shows that his book is a religious writing; its aims, he says, are to present 'the teachings, precepts, purposes and blessings of Christian Science and the ministry of Jesus Christ. To present religion in a practical and understandable way. * * * To present the principle of Christian Science to the clergy of all faiths * * *' When he complains that defendants have been unreasonably intolerant of his book, he is complaining about the sort of thing which historically has been a frequent characteristic of religious groups. All religious organizations claim the unrestricted right to designate which writings shall be accepted by their members. In this they are protected from State interference by the First Amendment.
 
 
 18
 Although there is no reference in the third count to the matter, appellant now argues that he states a cause of action under the antitrust laws. 15 U.S.C.A. § 1 et seq. With respect to this, it need only be said that in promoting his dissemination of religious ideas through his book, appellant is only incidentally attempting to enter trade or commerce. His enterprise and that of defendants, has no resemblance to the various activities which have been recognized as 'trade or commerce' under these acts. See United States v. Shubert, 348 U.S. 222, 226-227, 75 S.Ct. 277. According to the complaint, what the defendants were doing was to disapprove the manner or the language in which the appellant endeavored to advocate adherence to the Christian Science religion. The absolute right of the defendant in this respect is comparable to the absolute right of any religious order to select its own ministers, advocates, authors and sacred writings.
 
 
 19
 The judgment is affirmed.
 
 
 
 [1]
 Dismissal was with prejudice to the commencement of another action
 
 
 [2]
 They are far more limited than those of the labor union described in American Federation of Musicians v. Stein, 6 Cir., 213 F.2d 679. We do not regard that case as a further application of the rule of the Puerto Rico decision as the court merely sustained the trial court's retention of jurisdiction for the issuance of a preliminary injunction to preserve the status quo while the court 'after a hearing, adequate study and reflection' would have time 'properly to interpret and apply the law'
 
 
 [3]
 This distinction between suability and citizenship in this Constitutional sense may have been overlooked in Van Sant v. American Express Co., 3 Cir., 169 F.2d 355, 372
 
 
 [4]
 In Chase v. Dickey, 212 Mass. 555, 99 N.E. 410, the court was dealing with the application to this Church and these Directors of the limitation made by Sec. 9 of the same chapter upon the 'bodies corporate' described in section 1. Apparently it took it for granted that these 'bodies corporate' were corporations, for it referred to them as such, saying: at page 413 of 99 N.E.: 'A gift like the present to a corporation beyond its power to take can be questioned in the first instance by the Commonwealth alone. * * * The restrictions upon the powers of a corporation to hold property imposed either by the terms of its charter or by general law can be taken advantage of only in a direct proceeding by the creating sovereign power.'
 
 
 [5]
 The trial court that the Church and the Board of Directors had previously qualified as corporations in the State of California, and made the necessary filing with the Secretary of State for that purpose. They withdrew this qualification before this suit was instituted. Affidavits filed by appellees in support of their motions to dismiss disclose that the 'Christian Science Publishing Society' is 'one of the related activities of said Church and Directors'; that the Directors have the power of removal of the trustees who operate the Publishing Society; that this Society publishes the 'Christian Science Monitor' in Boston; the Society has news bureaus in Los Angeles and San Francisco which also solicit advertising. The Society has 15 employees in California, but none of them have authority to make budget or managerial decisions. Service was made upon the California Secretary of State. The court declined to quash the service, holding appellees were doing business in California in a manner warranting service as made
 
 
 [6]
 While the view we take of the corporate character of the Church and the Directors means that we agree that the requisite diversity of citizenship existed, it suggests problems relating to the merits of appellant's claims as against the Massachusetts corporation which are not discussed in the briefs. Since the corporate powers are limited to the taking and holding of real and personal property, and to power 'to manage, use and employ * * * any gift or grant made to them', with power to elect trustees, agents or other officers, with right to sue for any right which may vest in them, the problem is whether the acts of which appellant complains were in fact or in law performed by the corporation as such. Thus if appellant were alleging breach of a contract to hire him to repair corporate property, his problem of proving that the corporation breached its contract would be a different one than what confronts him here. This distinction between the acts of this Church and these Directors as a corporation, and the acts of individual persons acting merely as trustees under a will, was drawn in Chase v. Dickey, supra, note 4. We find it unnecessary to consider any problem of ultra vires, or of corporate action vel non, here
 
 
 [7]
 'The first cause of action, in substance, alleges that the plaintiff had heretofore been a Christian Science Practitioner and had had his name listed in the official publications of the church; that he withdrew his name from the list, spent a year writing a book and then requested that his name be reinstated as a Christian Science Practitioner in the publications of the church. That defendants failed to reinstate his name. That no disciplinary proceedings were taken under Church law; that he has exhausted his remedies within the church; that he has been damaged in the sum of $100,000. * * *
 'The second cause of action incorporates the allegations of the first, but adds additional facts, to-wit, that while plaintiff previously earned the sum of $15,000 per year, since his year of study and the writing of the book he would now earn $25,000 as a Christian Science Practitioner, and prays damages in the sum of $25,000 per year.'