**Abe STEIN, Plaintiff,**

v.

**AMERICAN FEDERATION OF MUSI-
CIANS OF UNITED STATES AND
CANADA, Defendants.**

**Civ. A. No. 1731.**

United States District Court
M. D. Tennessee,
Nashville Division.

April 29, 1960.

Ward Hudgins, and Harry Lester,
Nashville, Tenn., for plaintiff.

Jordan Stokes, III, Nashville, Tenn.,
and Emanuel L. Gordon, New York City,
for defendant.

WILLIAM E. MILLER, District
Judge.

This cause is before the Court upon
defendant's motion for summary judg-
ment dismissing the complaint for lack
of jurisdiction.[1]

The primary question, and the one
which is dispositive of the motion, is
whether the defendant, an unincorporat-
ed labor union having the capacity to
sue or be sued in its own name, is to be
considered a citizen of the state where
its principal place of business is located
for purposes of federal jurisdiction based
upon diversity of citizenship.

The Court has carefully considered the
opinion of the Court of Appeals rendered
in this case in 1954, American Federa-
tion of Musicians v. Stein, 6 Cir., 213
F.2d 679, 686, and decisions from other
jurisdictions since that time, and has
reached the conclusion that diversity of
citizenship does not exist in this case.

The diversity question was before the
Court of Appeals on an appeal by defend-
ant from a judgment of this court enter-
ed by the late Judge Elmer D. Davies,
granting plaintiff a temporary injunc-
tion. The Court of Appeals, in an ex-
haustive opinion by Judge (now Chief
Judge) McAllister, discussed the long-
recognized rule that the actual residence
of members of unincorporated associa-
tions is determinative of the citizenship
of the association for purposes of federal
jurisdiction on grounds of diversity.
Judge McAllister, after noting that "the
rule * * * seems to be losing its vital-
ity," goes on to discuss the case of People
of Puerto Rico v. Russell & Co., 288 U.S.
476, 53 S.Ct. 447, 77 L.Ed. 903, in which
the Supreme Court held that a *sociedad
en comandita* was, under the laws of
Puerto Rico, a juridical person with a
personality like that of a corporation,

---

1. By order entered January 3, 1958, the
complaint was dismissed as to all defend-
ants except the American Federation of

Musicians of the United States and Cana-
da, which is a voluntary unincorporated
association.

and that it had the status of a corporation for purposes of federal jurisdiction. The distinguishing feature of that case is that the attributes of the *sociedad* which the Supreme Court pointed out as compelling its recognition as a juridical person were founded upon and derived from the Codes of Puerto Rico. In its opinion, the Supreme Court stated:

"In the law of its creation, the *sociedad* is consistently regarded as a juridical person. * * * These characteristics under the Codes of Puerto Rico give content to their declaration that the *sociedad* is a juridical person. That personality is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law. In neither case may nonresidents of Puerto Rico who have taken advantage of its laws to organize a juridical entity for the purpose of carrying on business there, remove from the insular courts controversies arising under local law." (288 U.S. at pages 481, 482, 53 S.Ct. at page 449.)

One of the principal attributes of such a *sociedad* is that under the statutory law of Puerto Rico it is created by articles of association which are filed as public records, and that it has a legal status practically identical to that of a corporation.

Judge McAllister in his opinion above referred to, further stated [213 F.2d 689.]:

"Whether, in the light of People of Puerto Rico v. Russell & Co., supra, such national unions, with unity of action and power centered in their governing executive bodies, may be considered by the Supreme Court to be juridical persons equivalent to corporations for purposes of citizenship in cases in which jurisdiction is founded upon diversity of citizenship, is a question which, as far as

this proceeding is concerned, is properly, in the first instance, subject to the consideration of the district court, where its determination, by virtue of the order of the court granting the preliminary injunction, abides the hearing."

An examination of the decisions which have been reported during the six years which have elapsed since Judge McAllister's opinion of 1954, discloses that the courts continue to follow the rule that in cases where federal jurisdiction is based upon diversity grounds, the citizenship of an unincorporated association, including labor unions, is determined by the citizenship of its individual members. The following excerpts from various decisions are in point:

"Therefore, where jurisdiction is sought to be founded on diversity of citizenship, the action being by or against an unincorporated association, * * * the citizenships of the individual members of the unincorporated association must be shown to be wholly diverse from that of the opposing party or those of the opposing parties." [Citing cases.] Underwood v. Maloney, 3 Cir., 1957, 256 F.2d 334, 338, certiorari denied 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97.

"The contention of the appellees is that they are unincorporated societies or groups, and hence cannot be treated as citizens for purposes of determining federal jurisdiction. Such is the established rule relating to unincorporated associations such as joint stock companies, limited partnerships, boards of trustees, and labor unions." [Citing cases.] Swan v. First Church of Christ, Scientist, in Boston, 9 Cir., 1955, 225 F.2d 745, 747.

"It is clear that * * * there is no diversity of citizenship because the plaintiff, an unincorporated labor organization, is composed of * * * citizens of North Carolina, and the defendant is a North Carolina corporation. For jurisdictional pur-

poses, the citizenship of an unincorporated association is determined by the citizenship of its members." [Citing Underwood v. Maloney, supra.] Textile Workers Union of America v. Cone Mills Corp., D.C. N.C.1958, 166 F.Supp. 654, 657.

"Nor does this court have jurisdiction of plaintiff's action against the Union as an entity, for the Union is an unincorporated association and the citizenship of its members determines whether the required diversity of citizenship exists." [Citing cases.] Lloyd A. Fry Roofing Co. v. Textile Workers Union, D.C. Pa.1957, 149 F.Supp. 695, 696.

Compare Pavlovscak v. Lewis, 3 Cir., 1959, 274 F.2d 523, 524, footnote 1.

Thus, the courts, while recognizing a voluntary association as a legal entity for certain purposes, have consistently held that it is not analogous to a corporation for diversity purposes. A compelling distinguishing factor would appear to be that a corporation is a creature of the state under whose laws it is incorporated. It is the incorporating state that gives the corporation its life and existence, whereas an unincorporated association is created by the voluntary action of its members. Its creation is not dependent upon and has no necessary relationship to the laws of the state where it happens to have its principal place of business, nor of the state where it maintains its principal office, nor of any other state.

The existing rule has been judicially recognized for many years and is, of course, basically a rule of constitutional construction, since the judicial article extends the federal judicial power to cases and controversies "between Citizens of different States." Const., Art. 3, Sec. 2. Although many unincorporated associations doubtless have certain features or aspects of corporations, no sound reason appears to the Court for holding that they have a citizenship for diversity purposes apart from that of their members. On the contrary, persuasive reasons suggest themselves why the present rule should not be disturbed.

In the first place, no satisfactory alternative method of determining the citizenship of such an association has been suggested. In the case of a corporation, there is a logical basis for identifying the citizenship of the corporation with that of the incorporating state, since the laws of such state bring it into existence. But as noted above, this reason does not exist in the case of unincorporated associations whose existence is dependent upon the consent and agreement of the individual members and not upon the laws of any particular state. "Principal place of business" as a test of citizenship would in many cases afford a most indefinite and unrealistic standard, as would the place of the association's "principal office."

A further practical objection to any change in the existing rule is that it would doubtless further open the doors of the federal courts to litigation involving primarily questions of local or state law, and thus aggravate the already acute problem of congestion of court calendars and delays in the disposition of cases in the federal courts. The courts have recognized this problem as a serious one and it has also been recognized by the legislative branch of the Government. In recent years Congress has enacted legislation curtailing general jurisdiction in the federal courts by increasing the requisite jurisdictional amount and by imposing other restrictions. This problem should not be further complicated by judicially changing such a firmly established and generally recognized rule as the one now under consideration.

On the evidence presented, the defendant labor union possesses the attributes of the United Mine Workers of America as described and set forth by the Court in United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S. Ct. 570, 66 L.Ed. 975, but the Court is nevertheless of the opinion that diversity of citizenship does not exist in the present case and that the Court is without jurisdiction to entertain the action, it

appearing that there are members of the defendant union who are citizens of the state of Tennessee, and that the plaintiff is a citizen of the same state. It is therefore unnecessary to discuss other questions presented by the parties.

The attorneys for the respective parties will submit to the Court findings of fact and conclusions of law to implement this memorandum.