**R. H. BOULIGNY, INC., Appellant,**

**v.**

**UNITED STEELWORKERS OF AMERI-
CA, AFL–CIO, an unincorporated
association, Appellee.**

**No. 9326.**

United States Court of Appeals
Fourth Circuit.

Argued April 28, 1964.

Decided Aug. 6, 1964.

Gaston H. Gage and Joseph W. Grier, Jr., Charlotte, N. C. (Grier, Parker, Poe & Thompson, Charlotte, N. C., on brief), for appellant.

Michael H. Gottesman, Washington, D. C. (David E. Feller, Elliot Bredhoff, Jerry D. Anker, Washington, D. C., James Ledford, Charlotte, N. C., and

Cooper, Mitch & Crawford, Birmingham, Ala., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from an order of the district court denying a motion to remand the case to the state court. The district court has certified the appeal under 28 U.S.C.A. § 1292(b) (1958). We exercised our discretion to permit the appeal.

The plaintiff, a North Carolina corporation, brought suit for libel growing out of an organizational campaign in the state court against the defendant, United Steelworkers of America, an unincorporated labor union having its headquarters and principal place of business at Pittsburgh, Pennsylvania. The defendant removed the case to the district court on the grounds both of diversity of citizenship and that the subject matter of the action arises under the laws of the United States. Plaintiff moved to remand the case to the state court. In contesting plaintiff's motion, the defendant contended that it was a citizen of Pennsylvania with its principal place of business in that state, conceding, however, that certain of its members were citizens of North Carolina. The district court found the defendant to be "a juridical person as fully and completely as if it were organized as a corporation * * * and that its principal office and place of business is in Pittsburgh, Pennsylvania." It thereupon entered an order denying the motion to remand and certified an appeal to this court. We conclude that the order of the district court must be reversed with instructions to grant the motion to remand.

We discuss first the question of diversity of citizenship. In Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809), Chief Justice Marshall laid down the principle that a corporation is " * * * a mere creature of the law, invisible, intangible and incorporeal" which for purposes of diversity jurisdiction could not be treated as a citizen, notwithstanding the fact that the corporation could sue and be sued in its own name. In 1844, the Court departed from this doctrine in the case of Louisville, C. & C. R.R. v. Letson, 43 (2 Howard) 497, 11 L.Ed. 353 (1844), holding a corporation to be "deemed" a citizen of the chartering state. Pressure from the dissenters eventually forced the Court to return to Marshall's concept in Marshall v. Baltimore & Ohio R.R., 57 U.S. (16 Howard) 314, 14 L.Ed. 953 (1853), where it held that a corporation was not a citizen but an artificial being and that the citizenship of its stockholders must control. However, the Court achieved the same end result as in Letson (diversity jurisdiction) by creating a conclusive presumption that all of the stockholders were citizens of the chartering state. This doctrine remained unchanged until 1958 when 28 U.S.C.A. § 1332 was amended by adding section (c). Wright, Federal Courts 76 (1963). The doctrine has been criticized as an unjustifiable expansion of federal jurisdiction by means of a fiction; nevertheless, unincorporated associations have sought unsuccessfully to bring themselves within the rule.

In Chapman v. Barney, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 880 (1889), the Supreme Court laid down the rule with respect to unincorporated associations. It held that, for purposes of diversity jurisdiction, the actual citizenship of each of the members of an unincorporated association (in that case, a joint stock company) is controlling. In Great Southern Fireproof Hotel Co. v. Jones, 177 U.S. 449, 454–455, 20 S.Ct. 690, 692, 44 L.Ed. 842 (1900), the Court reaffirmed its holding:

"This court does not hold that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a state within the meaning of the Constitution.

* * * * * *

"But the express company cannot be a *citizen* of New York, within the

meaning of the statutes regulating jurisdiction, unless it be a corporation."

The Court, referring to the rule with respect to corporations, made it clear that the rule was not to be extended:

"That a limited partnership association created under the Pennsylvania statute may be described as a '*quasi* corporation,' having some of the characteristics of a corporation, or as a 'new artificial person,' is not a sufficient reason for regarding it as a corporation within the jurisdictional rule heretofore adverted to. *That rule must not be extended. We are unwilling to extend it so as to embrace partnership associations.*" (Emphasis added.) 177 U.S. at 457, 20 S.Ct. at 693.

We find no subsequent decision of the Court which would justify us in concluding that the rule has been extended. The Court did not do so in United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922). In that case the Coronado Coal Company brought suit against the international, district and local unions of the United Mine Workers for damages under section 7 of the Sherman Anti-Trust Act for conspiracy to restrain interstate commerce and to damage plaintiff's property. The unions moved to dismiss on the ground that as unincorporated associations they were not subject to suit. Since there was federal question jurisdiction, the diversity of citizenship issue was not involved. In an extended discussion the Court held that unions were suable as such, but the Court was careful to limit the application of the rule it was laying down.

"Though such a conclusion as to the suability of trades unions is of primary importance in the working out of justice and in protecting individu-

als and society from possibility of oppression and injury in their lawful rights from the existence of such powerful entities as trade unions, *it is after all in essence and principle merely a procedural matter.* As a matter of substantive law, all the members of the union engaged in a combination doing unlawful injury are liable to suit and recovery * * *." (Emphasis added.) 259 U.S. at 390, 42 S.Ct. at 576.

We now come to the case which purportedly has furnished the principal support for those who contend that the rule has been weakened. We think that the case furnishes no support whatsoever for such a position. In People of Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), the petitioner, People of Puerto Rico [1] brought suit in the insular court of Puerto Rico against Russell & Co. to collect a Puerto Rican tax assessment. Russell & Co. was an unincorporated association organized under Puerto Rican law as a *Sociedad en Comandita* (S. en C.). In the tradition of the civil law, a *Sociedad en Comandita* has many of the characteristics which both corporations and limited partnerships have under the common law, although those of the former predominate. The individual members of the *Sociedad* were not named as parties. They appeared specially and removed the case to the United States District Court for the District of Puerto Rico. The Supreme Court reversed and directed the district court to remand the case to the Puerto Rican insular court. The petition to remove and the decision of the Court were expressly based upon sections 41 and 42 of the Organic Act of Puerto Rico, now 48 U.S.C.A. §§ 863, 864 (1948). Section 41 provided that in addition to the jurisdiction possessed by the United States District Courts generally, the United States District Court for the

---

[1]. The fact that the plaintiff was the Puerto Rican Government was itself enough to warn the reader that the case could not involve constitutional diversity jurisdiction. A state, or territory, or political unit cannot be a citizen in that sense. Postal Tel. Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894).

District of Puerto Rico should have jurisdiction of "all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States *not domiciled in Puerto Rico * * *.*" [2] (Emphasis added.) Section 42 provided for removal of any case in which the court had original jurisdiction under section 41. Although in view of the character of the plaintiff, the suit could on no theory be entertained as a diversity suit by an Article III court, the Supreme Court said that "admittedly, if the individual members of the *Sociedad* are 'parties' within the meaning of the Organic Act * * * the suit is one within the jurisdiction of the District Court because of their nonresidence, *diversity of citizenship* being unnecessary." 288 U.S. at 478, 53 S.Ct. at 448. (Emphasis added.) Thus the question before the Court was simply one of the interpretation of the statute—not a question of constitutional diversity jurisdiction. The Court by analogy to a common law corporation held that the defendant, a civil law *Sociedad*, had a domicil in Puerto Rico and thus could not claim the domicil of its individual members to acquire the nonresident status required by the Organic Act. Clearly the case does not by any stretch of the imagination hold that the

*Sociedad* was a citizen of Puerto Rico for purposes of diversity jurisdiction under Article III. Nor can the Court's analogy between the civil law *Sociedad* and the common law corporation justify a contention that it was consciously expanding federal diversity jurisdiction.

American Federation of Musicians v. Stein, 213 F.2d 679 (6 Cir.), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954), since it rested upon Puerto Rico v. Russell & Co., supra, can furnish no support for defendant's contention. Furthermore, although it expressed sympathy with the argument, the case did not hold that a labor union was a citizen for diversity purposes. It merely held that the district court was justified in issuing a temporary injunction until the issue could be fully studied. It is interesting to note that the district court, when it did reach the issue, rejected the contention. Stein v. American Federation of Musicians, 183 F.Supp. 99 (M.D.Tenn. 1960). After reviewing the cases, the court reached the conclusion that the courts were following the rule that in cases where federal jurisdiction was based on diversity grounds, "citizenship of an unincorporated association, including labor unions, is determined by the citizenship of its individual members." 183 F. Supp. at 100.[3]

Whatever basis there once was for the belief that Russell intended to lay

---

2. It is obvious that this statute would not be constitutional as applied to an Article III district court. It was valid as enacted because the district court of Puerto Rico was a territorial court created by virtue of the power conferred on the Congress by Article IV § 3 to make all needful rules and regulations respecting the territory belonging to the United States. Balzac v. People of Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922); Porto Rico Ry., Light & Power Co. v. Colom, 106 F.2d 345 (1 Cir.), cert. denied, 308 U.S. 617, 60 S. Ct. 263, 84 L.Ed. 516 (1939).

3. The rationale of Van Sant v. American Express Co., 169 F.2d 355 (3 Cir. 1947), which found diversity, appears to be that since a New York joint stock association is treated by the New York courts "for

all practical purposes" as a corporation, it does not fall within the rule of Chapman v. Barney. The court lays stress on the fact that the issue was not raised by the defendant until rehearing on appeal. The court also cites Prof. Moore's comment on Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, at 3 Moore's Federal Practice ¶17.25, pp. 1413–1414, to the effect that the Chapman rule is itself beginning to show signs of being outmoded. Cf. 33 Colum.L.Rev. 540 (1933). We have rejected this interpretation of Russell.

In Mason v. American Express Co., 334 F.2d 392 (2 Cir. 1964), the Second Circuit was persuaded by the language of Russell to extend citizenship to a New York joint stock association for diversity purposes. We must respectfully disagree with that opinion.

down new principles for the determination of citizenship for diversity jurisdiction purposes, it was reversed by the passage of the 1958 amendment to the diversity statute. Prior to the 1958 amendment which added subparagraph (c) to 28 U.S.C.A. § 1332, the argument that the courts could substantially equate unincorporated associations with corporations by a minor feat of interpretation was easy to make. The statute spoke only of citizens; the question was whether an unincorporated association should be treated as a citizen—a question merely of interpretation—and the court could resolve it by application of the same kind of presumption that had served in the case of corporations. The 1958 amendment, however, did two things that upset the argument: (1) For the first time, it referred specifically to corporations, providing that they shall be "deemed" citizens. The old presumption that all the stockholders are citizens of the state of incorporation has been abandoned; it is now no necessary part of the argument for attributing citizenship to these entities. Corporations are treated as citizens because an Act of Congress directs that they be so treated. (2) For many corporations the statute now provides dual citizenship: a corporation is to be treated as a citizen of any state by which it is incorporated, and also of the state in which it maintains its principal place of business. This is, in the first place, confirmation of the fact that the fiction as to the citizenship of the stockholders has been abandoned.

It is hardly reasonable to presume that all the stockholders are domiciled in each of two separate states. But the principal point is that, even laying aside the matter of multiple incorporation, unincorporated associations cannot be equated with corporations by a simple judicial decision attributing citizenship to them. They are incapable of dual citizenship and hence would be treated more favorably than corporations for diversity purposes.

Such associations, if treated as citizens, would also be treated more favorably than corporations in the matter of venue. A corporation may be sued in any district in which it is incorporated, or licensed to do business, or is doing business. 28 U.S.C.A. § 1391(c) (1958). By no stretch of the process of interpretation can this section be read as applying to an unincorporated association. Hence such an association, if treated as a citizen for diversity purposes, would probably be held to be a resident of the district in which its principal office is located, making that district the only proper venue other than the district of the plaintiff's residence.

The Reporters for the American Law Institute's Study of the Division of Jurisdiction between State and Federal Courts are proposing that unincorporated associations be treated as citizens (of the state where the principal place of business is located) for purposes of diversity jurisdiction. See Tent.Draft No. 2, § 1301(b) (2) (1964). This indicates that there is informed sentiment in favor of such a development. Cf. Comment, Unions as Juridical Persons, 66 Yale L.J. 712 (1957). The proposal, however, is that the change be brought about by an Act of Congress amending the Judicial Code—not by judicial interpretation. The fact that such a change is proposed recognizes the propriety of addressing such a proposal to Congress.[4] It also recognizes the fact that under existing law unincorporated associations cannot be treated as citizens; indeed, in the Commentary (p. 61), the law existing to this effect is expressly recognized, though it is said there have been some "inroads" on the rule in recent years.

■ Having found no diversity, we also think that no federal question jurisdiction exists. The National Labor Re-

---

4. We readily concede that vis-a-vis a corporation, it would be quite feasible to treat a modern labor union as a citizen for diversity purposes. But the question of policy is certainly not one for decision of an intermediate appellate court.

lations Act is concerned only with the coercive effect of an alleged libel and not with its character as a common law tort. Radio Corporation of America, 106 N.L. R.B. No. 251 (1953). In accordance with the doctrine announced in Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts uniformly have held that libel and slander actions are to be governed by the substantive law of the state in which the torts allegedly occur. Schenectady Union Publishing Co. v. Sweeney, 122 F.2d 288 (2 Cir. 1941), aff'd per curiam, 316 U.S. 642, 62 S.Ct. 1031, 86 L.Ed. 1727 (1942). Since the National Labor Relations Act is not concerned with libel as a common law tort and the offense is specifically within the aegis of the substantive state law, we find no federal question.

Reversed.