Hazel BRANTLEY, Plaintiff,

v.

Robert DEVEREAUX and Oneita Knitting Mills, Defendants.

Civ. A. No. 8296.

United States District Court
E. D. South Carolina,
Charleston Division.

Jan. 15, 1965.

William W. Doar, Jr., Smith & Moore, Georgetown, S. C., for defendants.

SIMONS, District Judge.

Plaintiff alleges in her complaint that she was slandered by certain statements made by defendant Robert Devereaux, who at the time of the alleged slander, was acting within the scope of his authority as President of defendant Oneita Knitting Mills; that the alleged slanderous statements were made on or about July 15, 1963, in Andrews, South Carolina, during a collective bargaining session between representatives of the recognized bargaining agent for employees and the said Robert Devereaux, agent for the employer Oneita Knitting Mills. Complaint further states that at the time of the alleged slander, plaintiff was Vice-President of Local #371, International Ladies Garment Workers Union of America, AFL–CIO [1], and was engaged with other members and officers of the said Union in negotiating a collective bargaining agreement with Oneita Knitting Mills.

In the original answer filed March 26, 1964, defendants interposed a general denial, truthfulness of any statements made, and privilege. An amended answer was filed July 24, 1964, adding an additional defense that the subject cause of action is preempted to the National Labor Relations Board, which has exclusive jurisdiction and authority over the controversy.

On October 14, 1964, defendants filed motion to dismiss subject suit on the grounds that this court is without jurisdiction, since the matter is arguably subject to § 7 and/or § 8 of the National Labor Relations Act, as amended, 29 U.S. C.A. §§ 157 and 158,[2] and is thereby preempted to the primary jurisdiction of the National Labor Relations Board.

Suit was originally brought in the Court of Common Pleas, County of

E. N. Zeigler, Jr., McEachin, Townsend & Zeigler, Florence, S. C., for plaintiff.

1. Allegedly the recognized bargaining agent for employees.

2. Section 7 grants employees the right to organize, form, join or assist labor organizations, to bargain collectively through chosen representatives, and to engage in other concerted activities. Section 8 defines unfair labor practices by employers, and labor organization or its agents.

Georgetown, South Carolina. Petition for Removal to this court based on diversity of citizenship of parties and amount in controversy [3] was filed by defendants on March 10, 1964.

The motion to dismiss was heard by me in Charleston, South Carolina. Briefs were later submitted by both parties.

Plaintiff alleges that during the course of the aforementioned collective bargaining session, defendant Robert Devereaux stated that he did not care to discuss anything with the representatives of the union because of the violence which was taking place; that upon being asked by a representative of the union as to what violence he referred, he "replied 'Such as Hazel Brantley's going uptown and buying tacks and throwing them in the mill's gates and in people's driveways,' or words to that effect".[4]

The sole question before the court is whether the fact that the above alleged slanderous remarks were made during a collective bargaining session makes the controversy arguably subject to § 7 or § 8 of the National Labor Relations Act, supra, thereby preempting jurisdiction of subject action to the National Labor Relations Board in accordance with the decision of the United States Supreme Court in San Diego Unions v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 [1959].

In Garmon the Supreme Court considered the broad question of state and federal regulation of labor disputes. After having reviewed its prior decisions in this field, the Court said at 359 U.S. 245, 79 S.Ct. at 779:

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

In the course of the decision the Court enunciated two exceptions to its broad holding: [1] Where a matter is merely a peripheral concern of the Labor Management Relations Act, the State still has the power to regulate; [5] [2] Where the regulated conduct is so deeply rooted in local feeling and responsibility, the Court could not infer that Congress had deprived the States of the power to act. Falling within this category are cases where violent conduct or threats of violence are present in labor disputes. In these instances State jurisdiction prevails to grant compensation according to the traditional law of torts [6] and to enjoin such conduct.[7]

Defendants contend that such state and federal courts as have considered the question of federal preemption of tort

3. 28 U.S.C.A. § 1332.

4. Paragraphs 3 and 4 of plaintiff's complaint.

5. International Assn. of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018.

6. United Construction Workers v. Laburnum, Corp., 347 U.S. 656, at page 665, 74 S.Ct. 833, at page 838, 98 L.Ed. 1025 the court said: "To the extent that Congress prescribed preventive procedure against unfair labor practices, that case recognized that the Act excluded conflicting state procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care

we took in the Garner case [Garner v. Teamster Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228] to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived. The primarily private nature of claims for damages under state law also distinguishes them in a measure from the public nature of the regulation of future labor relations under federal law."
International Union, United Automobile Aircraft and Agr., etc., Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L. Ed.2d 1030.

7. Youngdahl v. Rainfair, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; United Auto Workers v. Wisconsin Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162.

actions arising out of labor disputes, not falling within the exceptions discussed above, have consistently followed Garmon, and have acquiesced to the exclusive jurisdiction of the National Labor Relations Board, citing Blum v. International Assoc. of Machinists, AFL–CIO, et al., 42 N.J. 389, 201 A.2d 46 [1963] and cases discussed therein; Piedmont Shirt Company v. Amalgamated Clothing Workers of America, 237 S.C. 13, 115 S. E.2d 499 [1960]; Iva Manufacturing Company v. International Ladies Garment Workers Union, 241 S.C. 566, 129 S.E.2d 521 [1963].

In the cases cited by defendants the courts found that the actions were arguably subject to § 7 and § 8 of the Act, and jurisdiction was thereby preempted to the National Labor Relations Board under Garmon. However, the facts in the cited cases differ sharply from the facts in the instant case.

In Blum, supra, an official of the employer company instituted a libel action against the union for sheets or leaflets distributed to employees during an organizational campaign. The court held that within the protection of § 7, supra, *the union had a right to distribute printed matter* and therefore, the question whether this right was violated was in the first instance in the exclusive jurisdiction of the National Labor Relations Board.[8]

In Local 100 of United Association of Journeymen, etc. v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 [1963] and in Local No. 207, International Association of Bridge, etc. Iron Workers Union v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 [1963] [both cases cited in Blum] union members instituted state court tort actions against the union. In Borden plaintiff alleged inability to obtain employment through unlawful discrimination by the union. The Supreme Court found that the union's conduct was "arguably" subject to § 8(b) (1) (A) by "restraining or coercing Borden in the exercise of his protected right; * * * and § 8(b)(2), by causing an employer to discriminate against Borden in violation of Section 8(a)(3)".[9]

In Perko, plaintiff brought action against local union for conspiring to deprive him of the right to continue to work as a "foreman". The Supreme Court said at 373 U.S. 706, 83 S.Ct. 1432:

"It is entirely possible that the Board might conclude that a foreman under the facts of this case is an employee and that a man whose status fluctuates, as Perko's seemingly did, is entitled to claim the protection afforded employees under the Act. Given such a conclusion, Perko's complaint—that the petitioners caused his discharge and prevented his subsequent employment as a foreman as well as a superintendent—falls within the ambit of the unfair labor practices prohibited by §§ 8(b)(1) (A) and 8(b)(2) of the Act."[10]

Piedmont and Iva, supra, the two South Carolina cases cited by defendants, involved peaceful picketing of employer's stores by unions, and employer's requests for injunctions. The court properly found these actions to be within the exclusive ambit of the National Labor Relations Board.

---

8. In this case the court found the company to be a close family corporation, and plaintiff was a member of the family. The court said "In the present context, no differentiation may fairly be drawn between him and the employer corporation."

9. Section 8(a) of the Act provides that it shall be an unfair labor practice for an employer "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." Section 8(b) of the Act provides that it shall be an unfair labor practice for a labor organization or its agents "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * *," or "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *."

10. See note 9, supra.

The matter before the court herein clearly differs factually from the cited cases in that this action involves a suit by an individual employee against an officer of a company individually and against the company on theory of agency. Also, this dispute does not arise out of an organizational campaign but a collective bargaining session. During an organizational campaign employer and union are permitted to use biased propaganda to publicize their respective positions in regards to the impending election, whereas in a collective bargaining session both union representatives and employer are charged by law with the duty of bona fide, good faith bargaining, in an attempt to reach a settlement.

In the cases cited by defendants, the activity in question was found to be arguably subject to § 7 or to specific provisions of § 8 of the Act. In the case before the court, however, the alleged slanderous remarks could only be considered as evidence of lack of good faith bargaining on behalf of defendants, or at best, the alleged statements could only be violations of § 8(a)(1) [11] of the Act. This question would have to be considered in light of § 8(c) which was included as a provision of the Taft-Hartley Act, June 23, 1947, and provides as follows:

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

This court, therefore, does not in this instance feel bound by the decisions in the cases cited by defendants, but must make an independent appraisal of the different facts and circumstances in the case at bar to determine if jurisdiction of the action is preempted to the National Labor Relations Board in accordance with the principles enunciated in Garmon, supra.

Following an extensive and close study of the leading cases cited by plaintiff and defendants, and later cases and annotations on the subject, this court is guided in its determination herein by the fact that in this troublesome and unsettled area of the law the problem which is sought to be avoided is *conflicting regulation of labor disputes by the State and Federal governments.* National labor legislation is not concerned with or directed towards common law tort actions where the question of coercion or regulation of labor relations is not involved.

In San Diego Unions v. Garmon, supra, 359 U.S. at 241 and 244, 79 S.Ct. at 777 and 779, 3 L.Ed.2d 775, the Court said:

"The case before us concerns one of the most teasing and frequently litigated areas of industrial relations, the multitude of activities regulated by §§ 7 and 8 of the National Labor Relations Act. 61 Stat. 140, 29 U.S.C. §§ 157, 158, These broad provisions govern both protected 'concerted activities' and unfair labor practices. They regulate the vital, economic instruments of the strike and the picket line, and impinge on the clash of the still unsettled claims between employers and labor unions. The extent to which the variegated laws of the several States are displaced by a single, uniform, national rule has been a matter of frequent and recurring concern. * * * *When it is clear or may fairly be assumed that the activities which a State purports to regulate* are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must

[11]. 8(a) (1) provides: "It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."

yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law." [Emphasis added].

The recent case of R. H. Bouligny, Inc. v. United Steelworker of Amer., 336 F.2d 160 [4th Cir.1964] involved a libel action by plaintiff, a North Carolina Corporation, against defendant, an unincorporated labor union, growing out of an organizational campaign. The suit was originally brought in the state court and removed to district court on grounds of diversity of citizenship and that subject matter arose under the laws of the United States. District Court denied plaintiff's motion to remand and certified an appeal. In reversing the district court the Fourth Circuit, speaking through Judge Bell, said at 336 F.2d 164, 165:

"Having found no diversity, we also think that no federal question jurisdiction exists. *The National Labor Relations Act is concerned only with the coercive effect of an alleged libel and not with its character as a common law tort.* Radio Corporation of America, 106 N.L.R.B. No. 251 (1953). In accordance with the doctrine announced in Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts uniformly have held that libel and slander actions are to be governed by the substantive law of the state in which the torts allegedly occur. Schenectady Union Publishing Co. v. Sweeney, 122 F.2d 288 (2 Cir.1941), aff'd per curiam, 316 U.S. 642, 62 S. Ct. 1031, 86 L.Ed. 1727 (1942). Since the National Labor Relations Act is not concerned with libel as a common law tort and the offense is specifically within the aegis of the substantive state law, we find no federal question." [Emphasis added].

The subject suit involves no question of coercion or regulation of a labor dispute. Neither the labor union nor the defendant company, in the employer relationship as such, is a party to the controversy. The power of the state court here is analogous to that where such court has jurisdiction to entertain suit and award damages against individuals or a union for physical injuries suffered during the course of a labor dispute.[12] Indeed, the language of Mr. Chief Justice Warren, in his dissent in International Union, United Automobile, Aircraft and Agr., etc., Workers v. Russell, 356 U.S. at 649, 78 S.Ct. at 941, 2 L.Ed.2d 1030, in which he discusses state's power to award damages for physical injuries is appropriate here:

"The Court must determine whether the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Hines v. Davidowitz, 312 U.S. 52, 67, [61 S.Ct. 399, 404, 85 L.Ed. 581]. If the state action would frustrate the policies expressed or implied in the Federal Act, then it must fall. * * * Petitioners do not deny the State's power to award damages against individuals or against a union for physical injuries inflicted in the course of conduct regulated under the Federal Act. The majority's illustration involving facts of that sort is therefore beside the point. But the power to award damages for personal injuries does not necessarily imply a like power for other forms of monetary loss. The unprovoked infliction of personal injuries during a period of labor unrest is neither to be expected nor to be justified, but economic loss inevitably attends work stoppages. Furthermore, damages for personal injuries may be assessed without regard to the merits of the labor controversy, but in order to determine the cause and fix the responsibility for economic loss a court

12. See Hall v. Walters, 226 S.C. 430, 85 S.E.2d 729, cert. denied, 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1277.

must consider the whole background and status of the dispute."

In this case, as in a suit to recover damages for personal injuries, the merits of the labor controversy is not involved and the court does not have to consider "the whole background and status of the [labor] dispute." Neither is a labor union being subjected to a verdict to be rendered by a possibly anti-labor jury.[13]

Defendants herein assert that this action is arguably subject to § 7 or § 8 of the Act merely because the alleged slanderous remarks were made during the course of a collective bargaining session. However, the fact that certain actions are taken or statements made during the course of such a session does not in itself make them subject to §§ 7 or 8 of the Act. To come within the protective sphere of these provisions, the actions must either constitute an unfair labor practice under § 8, or be an infringement of the rights of employees protected by § 7. San Diego Unions v. Garmon, supra. This is not an action that involves regulation of labor relations, nor that is concerned with the merits of a labor dispute.

This suit is a common law action in tort for actual and punitive damages claimed to have been suffered by reason of the alleged slander. The prosecution of this action causes no conflict with federal jurisdiction of National Labor Relations Board and is not within the area intended to be preempted to it by Congress. The National Labor Relations Act affords no remedy or redress to plaintiff for her alleged wrong. At most such matter is merely a peripheral concern of said Act and comes within exceptions enunciated by Garmon, supra.

In Kimbrell v. Jolog Sportswear, Inc., 239 S.C. 415, 123 S.E.2d 524 [1962] employees brought suit in State Court for actual and punitive damages against employer and union based on wrongful withholding of wages. Defendants contended that the activities in question constituted a labor dispute and an unfair labor practice, and that jurisdiction was therefore preempted by the National Labor Relations Board under Garmon. The South Carolina Supreme Court held that the action was of compelling State interest within the exceptions enumerated in Garmon, supra,[14] and said at 123 S.E.2d 527:

"As heretofore stated, this is not an action to regulate labor relations, either directly or indirectly, but an action to recover damages for the tortious withholding of wages due to the plaintiff employees. *The National Labor Relations Board cannot award damages for the wrong done, and, if the National Labor Relations Act has the effect contended by defendants, then it becomes a shield for the tortious conduct alleged instead of a remedy.*" [Emphasis added].

■ Furthermore, I have concluded that this action has no coercive effect upon, and does not involve, the regulation of labor relations, either directly or indirectly; that it is therefore not subject to the principles enunciated in Garmon, supra, and consequently I hold that plaintiff's cause of action is not arguably subject to §§ 7 and 8 of the Act, and that jurisdiction of this court is not preempted to National Labor Relations Board.

It is therefore ordered that defendants' motion to dismiss be, and it hereby is, denied.

■ In accordance with Section 1292 (b) of 28 U.S.C.A., the court hereby certifies that it is of the opinion that the within order involves controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the within order denying defendants' motion to dismiss plaintiff's action may materially advance the ultimate termination

---

13. See dissent Chief Justice Warren, International Union, United Automobile, Aircraft and Agr., etc., Workers v. Russell, supra.

14. See page 158, supra, and notes 5 and 6.

of the litigation; and that defendants should have the opportunity to apply to the Court of Appeals of the Fourth Circuit for permission for an appeal to be taken from such order if they should so desire. Should such application for an appeal be made by defendants and such permission be granted by the Court of Appeals, then further proceedings in this case shall be stayed until a determination of the appeal.