**INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, etc., et al., Plaintiffs,**

v.

**PIASECKI AIRCRAFT CORPORATION, Defendant.**

Civ. A. No. 1856.

United States District Court
D. Delaware.

May 3, 1965.

Ernest S. Wilson, Jr., Wilson & Lynam, Wilmington, Del., and Lowell Goerlich, Washington, D. C., for plaintiffs.

John M. Bader, Bader & Biggs, Wilmington, Del., and Robert P. Garbarino, Crumlish & Kania, Philadelphia, Pa., for defendant-counterclaimant.

LAYTON, District Judge.

This prolonged litigation arises out of the purchase by defendant from Bellanca Aircraft Corporation of the latter's assets and business in New Castle, Delaware, in November 1956. For some years prior thereto, there was a labor contract in effect between Bellanca and the plaintiff Union providing, among other things, that (a) 60 days notice must be given by either party to the other of an intention to terminate or modify and (b) 15 days notice must be given by Bellanca to terminate due to the sale of its business to another party.

In early November 1956, Bellanca gave plaintiff Union 15 days' notice of its intention to sell and transfer its entire assets and business to this defendant. After the transfer, labor disputes broke out between plaintiff Union and defendant, and on December 20, 1956, plaintiff

filed this action. 28 U.S.C. § 1332 and 29 U.S.C. § 185. Defendant answered and counterclaimed. Simultaneously, or very shortly thereafter, plaintiff filed a complaint covering the same subject matter before the National Labor Relations Board (N.L.R.B.). The N.L.R.B. complaint was fully adjudicated before the Board which in large part found for plaintiff. Piasecki Aircraft Corporation, 123 N.L.R.B. 348 (1959). Both defendant and plaintiff Union appealed to the Third Circuit Court which substantially affirmed the Board, Piasecki Aircraft Corp. v. National Labor Relations Board, 3 Cir., 280 F.2d 575 (1960), and the United States Supreme Court denied certiorari, International Union, United Auto, etc., U.A.W.–C.I.O. v. National Labor Relations Board, 364 U.S. 912, 81 S.Ct. 276, 5 L.Ed.2d 226 (1960); Piasecki Aircraft Corp. v. National Labor Relations Board, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961).

Thereafter, over the protest of plaintiff Union, the Board entered settlement negotiations with plaintiff's employees and, in the main, settled most of the outstanding disputes between the two. Still objecting, plaintiff appealed the settlement to the Third Circuit Court which refused to set the settlement aside. Intern. Union, United Auto., etc., A.F.L.–C.I.O. v. National Labor Relations Board, 316 F.2d 239 (1963).

The Supreme Court of the United States denied certiorari. Intern. Union, United Auto., etc., A.F.L.–C.I.O. v. National Labor Relations Board, 375 U.S. 827, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963).

During all these years, the case at bar remained dormant. However, after the denial of certiorari, plaintiff Union, still unsatisfied, has signified its intention to prosecute this action to termination as to some few matters not disposed of in its favor by the N.L.R.B. proceedings. Motions to dismiss the complaint and the counterclaim were filed, briefed and have been argued.

## MOTION TO DISMISS COMPLAINT

This complaint is bottomed upon the contract between plaintiff Union and Bellanca. Defendant contends that this contract was never binding on it and, with considerable persuasiveness, argues that the Third Circuit Court so held in 280 F.2d 575, with the result that plaintiff is collaterally estopped from further urging the point. If so, the complaint should be dismissed. Defendant, curiously enough, did not carry its argument on beyond this point and argue that, aside from collateral estoppel, the contract did not bind it. Accordingly, I shall confine my discussion to the collateral estoppel point.

Certainly, the Third Circuit Court throughout its opinion on several occasions employed language rather clearly indicating that the contract forming the basis of this suit did not bind Piasecki. However, the complaint as brought before the Board was not grounded on the contract but rather on Piasecki's alleged violation of 29 U.S.C. § 158(a) (1), (3) and (5). For this reason, the Board's Trial Examiner said:

"Consequently in this case, since the Union's contention that Respondent [Piasecki] has breached a contractual obligation to bargain *is not encompassed by, nor relevant to,* any allegation in the complaint, it need not, and will not, be considered in this Report." (Emphasis added.)

As to this, the Circuit Court said at 280 F.2d 587–588:

"In effect the Union charged that the complaint filed by the General Counsel was broad enough to support proofs that Piasecki was bound by the contract; that those proofs, including the contract, were in evidence without objection; and that a finding of the binding effect of the contract should have been made. The Union urges that the case be remanded to the Board for that purpose.

"But the fact is that the Union's contract with Bellanca specifically

provided in paragraph 89 thereof for termination prior to its expiration date in the event that the plant or business was sold to a vendee not affiliated with Bellanca upon the giving of 15 days notice prior to the consummation of the sale.

"The Union alleges a conflict between this provision of the contract and Section 8(d) (1) which provides for a sixty day notice of termination. Perhaps this section could create liability between Bellanca and the Union but it does not embrace Piasecki—not a party to the contract."

And again at pages 583–584 of the opinion, the Circuit Court states:

"It seems apparent from Paragraph 13 of the contract for sale between Piasecki and Bellanca that Piasecki was fully aware of the contract between Bellanca and the Union and that it did not intend to expose itself to any obligation which bound Bellanca, and, therefore, required Bellanca as a condition of sale to discharge all of its employees prior to settlement, as provided for in Paragraph 89 of the Bellanca-Union contract."

■ But regardless of this language, the context in which it was used, as well as the fact that the N.L.R.B. complaint was not grounded on the contract, raises a serious question whether the issue of the binding effect of this contract was squarely before the Board or the Third Circuit Court. Accordingly, I decline to apply the doctrine of collateral estoppel to this case.

■ However, since the Third Circuit Court indicated rather clearly that had the issue been before it, the contract would not have been construed as binding Piasecki, I feel the burden is on plaintiff Union at this point to demonstrate why the contract in question can form any valid basis for this complaint.[1] Accordingly, I will require plaintiff to file a brief within 20 days as to why the contract between plaintiff and Bellanca binds Piasecki. Defendant may have 10 days to reply. Should oral argument be needed, I shall inform counsel.

The defendant's motion to dismiss is temporarily denied.

## MOTION TO DISMISS COUNTERCLAIM

We turn now to defendant's counterclaim. It is in the amount of $100,000 for damages allegedly resulting from violence during the strike following the sale by Bellanca to Piasecki of the former's assets and business. Plaintiff argues that this Court has no jurisdiction as to the counterclaim. Defendant contends that jurisdiction exists for two reasons. First, because the counterclaim is compulsory giving rise to ancillary jurisdiction and, secondly, because there is diversity of citizenship.

A counterclaim has been held to be compulsory if there is a logical relationship between it and the main claim. Thus, in Great Lakes Rubber Corporation v. Herbert Cooper Co., 286 F.2d 631 (1961), Judge Biggs speaking for the Third Circuit Court said this:

"We have indicated that a counterclaim is compulsory if it bears a 'logical relationship' to an opposing party's claim. Zion v. Sentry Safety Control Corp., 3 Cir., 1958, 258 F.2d 31. See also United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 1955, 221 F.2d 213, 216. The phrase 'logical relationship' is given meaning by the purpose of the rule which it was designed to implement.

1. Also by letter dated Sept. 24, 1963, plaintiff's counsel conceded that if the U. S. Supreme Court denied certiorari from the Third Circuit Court's opinion in 280 F.2d 575, which it, in fact, later did, the litigation would virtually be concluded. Moreover, on a later date, plaintiff's counsel conceded in open court that due to the denial of certiorari by the U. S. Supreme Court, the complaint should be dismissed. Judge Steel accordingly directed that an order dismissing the complaint be prepared for his signature. For unexplained reasons, this was never done.

Thus, a counterclaim is logically related to the opposing party's claim *where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are off-shoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. * * * "* (Emphasis added.)

■ While broadly speaking, the strike giving rise to the violence complained of in the counterclaim arose out of the labor grievances alleged in the complaint, nevertheless, I see no logical relationship between the two within the meaning of the language above quoted. Nor do I agree, as defendant argues, that the issue of the effect of the labor contract between Bellanca and this plaintiff is common to both the main claim and the counterclaim. Even though the contract were not binding on Piasecki, which would render the complaint invalid, yet, properly asserted, Piasecki might have a valid action against plaintiff for tort damages as a result of violence [2] on the picket line.

The subject matter forming the basis for the claims alleged in the complaint have to do solely with the effect of the Union-Bellanca contract on Piasecki. Thus, the complaint charges damages resulting to employees by reason of (1) Piasecki's alleged default in making contributions to the insurance program, (2) for the violation of seniority provisions of the contract, (3) lost wages, (4) lost union dues and (5) lost vacation benefits. On the other hand, the subject matter of the counterclaim is a common law tort action for damages allegedly resulting from violence resulting from illegal picketing activities during the strike which grew out of the alleged improper labor relations conduct of the employer.

While, as stated earlier, there is a broad relationship between the two, nevertheless, the questions of fact relevant to alleged violence on the picket line are not common to the subject matter of the complaint and the two claims do not represent the "same basic controversy" envisioned by the reasoning of the Third Circuit Court in the cited case.

■ While open to some debate, it is my view that the counterclaim cannot be construed as compulsory.

■ Regardless of this, defendant contends that there is diversity of citizenship here and the jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332. The question of how diversity should be determined for unincorporated associations has been the subject of considerable thought and comment. Under the present state of the law, it is my conclusion that diversity is not present in this case because members of the plaintiff Union are citizens of the same state as the defendant. Great Southern Fireproof Hotel Co. v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900); Chapman v. Barney, 129 U.S. 677, 96 S.Ct. 426, 32 L.Ed. 800 (1889); Underwood v. Maloney, 256 F.2d 334 (3 Cir. 1958); Nedd v. United Mine Workers, 225 F. Supp. 750 (E.D.Pa.1963) relying on Underwood v. Maloney, supra, aff'd per curiam, 332 F.2d 373 (3 Cir. 1964). There are persuasive arguments that unincorporated associations should be treated as citizens of the state where the principal place of business is located. But I am convinced that any such innovation in diversity standards can only result from legislative action. R. H. Bouligny, Inc. v. United Steelworkers of America, 336 F.2d 160 (4 Cir. 1964), cert. granted, 379

---

2. It seems clear that federal and state courts have jurisdiction only insofar as concerns union violence and threats to public order, not where peaceful picketing forms the basis of a complaint. Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).

U.S. 958, 85 S.Ct. 666, 13 L.Ed.2d 554 (Nov. 24, 1964).

 Defendant argues that diversity should not be determined on the basis of union members' residence because 10 Del. Code § 3904 provides that an unincorporated association can be sued as an entity. This argument is without merit. Statutes such as 10 Del.Code § 3904 deal only with identification of the party in suits involving unincorporated associations. They do not affect diversity requirements. Underwood v. Maloney, supra, at 337–338.

The counterclaim is dismissed for lack of jurisdiction.